**Ex parte Clyde Livingston WILSON, Relator.**

**No. 12742.**

Court of Civil Appeals of Texas, Austin.

Dec. 14, 1977.

Fred McLeroy, James W. Piper, Legal Aid & Defender Society of Travis County, Austin, for relator.

Richard Craig, Tex. Dept. of Human Resources, Child Support Enforcement Div., Austin, Charles Hardy, Travis County Asst. Dist. Atty., Austin, for respondent.

SHANNON, Justice.

This is an original habeas corpus proceeding filed in this Court pursuant to Tex.Rev. Civ.Stat.Ann. art. 1824a (Supp.1976). The important question concerns relator's right to counsel at a contempt proceeding.

The statement of facts was agreed. Relator, Clyde Livingston Wilson, and Linda Gail Wilson were divorced on October 5, 1973. The divorce decree ordered relator to pay child support in the sum of fifty dollars each week. Relator has made none of the support payments.

On July 19, 1976, after hearing in which relator was represented by counsel, relator was found in contempt for failing to pay child support. The district court then ordered relator confined for six months. The court, however, suspended that punishment, and instead, ordered relator to pay two hundred forty dollars each month as a condition for the suspension of the order of confinement.

In October, 1976, Linda Gail Wilson assigned her right to collect child support payments from relator to respondent Texas Department of Human Resources.

In August, 1977, respondent filed a motion for contempt with the district court alleging that relator was in contempt for failure to pay child support as directed by the court in its order of July, 1976.

On August 26, 1977, the district court heard the motion for contempt. Relator was present in court, but he was not represented by counsel. When the district court asked relator if he had an attorney, he replied that he did not. Although counsel for relator asserted in the brief that relator was indigent, there is no showing in the record whether or not relator was indigent at the time of the contempt hearing. During the hearing for contempt relator was called and testified.

After hearing, the district court entered an order finding relator in contempt for violating the order of July, 1976. As punishment relator was ordered confined to jail for six months and to pay a five hundred dollar fine.

To make more precise the issue, we first determine whether the contempt for which relator was charged was civil or criminal and whether the contempt was direct or constructive.

■ "The purpose of civil contempt is remedial and coercive in nature. A judgment of civil contempt exerts the judicial authority of the court to persuade the contemnor to obey some order of the court where such obedience will benefit an opposing litigant. Imprisonment is conditional upon obedience and therefore the civil contemnor 'carries the keys of [his] prison in [his] own pocket.'" *Ex parte Werblud,* 536 S.W.2d 542, 545 (Tex.1976); accord, *Ex parte Hosken,* 480 S.W.2d 18, 23 (Tex.Civ. App.1972).

■ "Criminal contempt on the other hand is punitive in nature. The sentence is not conditioned upon some promise of future performance because the contemnor is being punished for some completed act which affronted the dignity and authority of the court." *Ex parte Werblud, supra.*

■ A direct contempt occurs within the presence of the court; a constructive contempt outside the presence of the court. *Ex parte Ratliff,* 117 Tex. 325, 3 S.W.2d 406 (1928).

■ Because the order punishes relator for a completed act which affronted the dignity and authority of the district court, the contempt is classified as criminal. Since relator violated the July, 1976, order outside the presence of the court, the contempt is a constructive contempt.

■ Relator, then, appeared *pro se* at a constructive criminal contempt proceeding. Was relator deprived of his liberty without due process of law because he was not represented by counsel?

Relator's thesis is that in a criminal constructive contempt, the contemnor is entitled to all of the protections afforded a defendant in a criminal prosecution. More specifically, relator claims that he was entitled to counsel pursuant to the Sixth Amendment of the Constitution of the United States.

As a beginning point, relator relies upon *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); *Argersinger v. Hamlin,* 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972), and *In re Gault,* 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967). *Gideon* held that an indigent defendant in state court who is accused of a felony offense is entitled to a court appointed attorney. In *Argersinger,* the petitioner was convicted in a Florida state court of a misdemeanor offense and sentenced to ninety days in jail. The petitioner, an indigent, was not represented by counsel at trial. The Supreme Court reversed the conviction stating that absent a knowing and intelligent waiver, no person may be imprisoned for any offense, whether classified as petty, misdemeanor, or felony, unless he was represented by counsel at trial. In *Gault,* the Court refused to recognize a distinction between a juvenile delinquency proceeding and a criminal prosecution. The Court held that due process required that in proceedings to determine delinquency which may result in commitment to an institution in which the juvenile person's liberty is curtailed, the juvenile and his parents must be notified of the juvenile's right to be represented by counsel.

Relator correctly states that several United States Courts of Appeals have held that *indigents* accused of *either* civil or criminal contempt are entitled to appointed counsel. Most of those cases acknowledge *Argersinger* as authority for the holding. *U. S. v. Anderson,* 553 F.2d 1154 (8th Cir. 1977); *In re Di Bella,* 518 F.2d 955 (2nd Cir. 1975); *Henkel v. Bradshaw,* 483 F.2d 1386 (9th Cir. 1973); *In re Kilgo,* 484 F.2d 1215 (4th Cir. 1973); *U. S. v. Sun Kung Kang,* 468 F.2d 1368 (9th Cir. 1972).

Several of the state courts have concluded that in *either* civil or criminal contempt hearings, an *indigent* contemnor has a constitutional right to court appointed counsel. *Tetro v. Tetro,* 86 Wash.2d 252, 544 P.2d 17 (Wash.1975); *Otton v. Zaborac,* 525 P.2d 537 (Alaska 1974); Annot., 52 A.L.R.3rd 1002 (1973). In those jurisdictions that the courts refused to apply *Argersinger* in civil contempt hearings, the inferences in the opinions were that the holding in *Argersinger* would apply to a criminal contempt proceeding. *Duval v. Duval,* 114 N.H. 422, 322 A.2d 1 (1974); *Sword v. Sword,* 399 Mich. 367, 249 N.W.2d 88 (1976).

Finally, even in cases involving non-indigent contemnors, several courts have concluded that in any civil or criminal contempt proceeding where imprisonment is a possibility, a contemnor, appearing *pro se,* must be informed of his right to counsel prior to the hearing. *Ferris v. Maass,* 75 Wis.2d 542, 249 N.W.2d 789 (1977); *Eastern Assoc. Coal Corp. v. Doe,* 220 S.E.2d 672, 682 (W.Vir.1975).

Respondent's best authority is *Gagnon v. Scarpelli,* 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973). In *Gagnon* the Court held that due process did not require the appointment of counsel for a probationer in a revocation of probation hearing. The Court observed that the requirement of counsel in all revocation cases would impose "direct costs and serious collateral disadvantages without regard to the need or likelihood in a particular case for a constructive contribution by counsel." The requirement of counsel in such hearings would prolong the decision-making process,

"and the financial cost to the State—for appointed counsel, counsel for the State, a longer record, and the possibility of judicial review—will not be insubstantial."

There is no in point authority in Texas. The Texas Supreme Court has observed, in general, that contempt proceedings, whether criminal or civil, are criminal in nature and, accordingly, should conform as nearly as practicable to a criminal proceeding. *Deramus v. Thornton,* 160 Tex. 494, 333 S.W.2d 824, 829 (1960); see *Ex parte Davis,* 161 Tex. 561, 344 S.W.2d 153 (1961). The Beaumont Court of Civil Appeals concluded in a criminal contempt proceeding that the contemnor's Sixth Amendment right to counsel was violated by the district court's refusal to permit the contemnor to hire an attorney before the hearing. *Ex parte Hosken, supra.*

One significant distinction obtains between the case at bar and most of the cases marshalled by relator, that being that the record does not show that relator was indigent. Otherwise, we acknowledge that relator's authority is persuasive.

In connection with the respondent's argument grounded upon *Gagnon,* we judicially know that criminal contempt hearings in this state, on an annual basis, number in the several hundreds and, of that number, many of the contemnors appear *pro se.* We also recognize that the requirement of counsel in such hearings would prolong the decision-making process and, in the case of indigents, increase the financial burden to the state.

In the absence of controlling precedent from the Supreme Court of the United States, or the Supreme Court of Texas, and under the circumstances of this case, this Court, being an intermediate appellate court, will deny the application for writ of habeas corpus. Texas Rev.Civ.Stat.Ann. art. 1737 does empower, however, the Supreme Court of Texas to entertain applications for writs of habeas corpus, and it is both fitting and proper for that Court to finally determine an issue which affects the liberties of many and the purses of all.

Application Denied.