**Ex parte William J. HIESTER, Jr., Relator.**

**No. B–7599.**

Supreme Court of Texas.

June 21, 1978.

Donna Claire Pendergast and Philip S. Greene, Houston, for relator.

Dick DeGuerin, Houston, for respondent.

GREENHILL, Chief Justice.

This is an original habeas corpus proceeding which arises from an order committing William J. Hiester, Jr., to jail for contempt of court in failing to make child support payments. The contempt hearing which led to Mr. Hiester's imprisonment was held without the presence of his attorney, and Mr. Hiester contends that he was thus deprived of his liberty without due process of law. Under the particular facts of this case, we agree with this contention.

The record before us contains the order committing Mr. Hiester to jail, the original child support order, affidavits by Mr. Hiester and by an associate of his counsel, and a docket sheet from the United States District Court, Southern District of Texas. Also before us are a narrative statement of facts describing the events prior to the contempt hearing, and a question-and-answer form statement of facts taken during that hearing. Based on these documents, we adduce the following facts.

William Hiester and his wife Gemey have one minor child, Christa. Under a previous court order, Gemey Hiester was named Temporary Managing Conservator of the child, and William Hiester was ordered to pay child support in the amount of $100.00 per week. He fell behind in these payments and, on Mrs. Hiester's motion, he was cited to appear before the court to show cause why he should not be held in contempt. The contempt hearing was placed on the docket for the morning of March 6, 1978. Both Mr. Hiester and his attorney, Philip S. Greene, had notice.

On the morning of March 6, William Hiester arrived in the courtroom about 8:30 a. m. Shortly thereafter, an associate of Mr. Greene, Dan Gerson, stopped by the courtroom, at Mr. Greene's request, to inform Mr. Hiester and opposing counsel that Mr. Greene was delayed in federal court proceedings and would arrive shortly after 10:00 a. m. Mr. Gerson did not locate the opposing counsel but he did instruct Mr. Hiester to wait for Mr. Greene, who would be there as soon as possible. Mr. Gerson then left to attend to other state and federal court business. According to Mr. Gerson's affidavit, William Hiester was Philip Greene's client and he, Dan Gerson, had not represented Mr. Hiester.

At 9:00 a. m. the docket was sounded; and when the instant case was called, Gemey Hiester and her attorney announced ready. William Hiester stated to the court that his attorney was not present but would arrive shortly. The trial judge, who apparently understood Mr. Hiester to say that Dan Gerson was his attorney, instructed Mr. Hiester to go into the hallway to look for Mr. Gerson. Mr. Hiester followed this instruction but was unable to find Mr. Gerson. At approximately 10:00 a. m., the case was again called, and Mr. Hiester again stated that his counsel was not present and would arrive shortly. This sequence of events was repeated at 10:15, and the trial judge instructed Mr. Hiester to have his attorney report to the courtroom immediately.

In the meanwhile, Dan Gerson had arrived at the federal courthouse and discovered that Philip Greene was still involved in the federal court proceedings. Mr. Gerson immediately telephoned the clerk of the court in which the contempt hearing was being held, and he informed the clerk and Gemey Hiester's attorney of Mr. Greene's delay. Upon being told that the contempt hearing was about to proceed, Mr. Gerson asked to speak to the judge. This request was refused, and the judge directed the clerk to instruct Mr. Gerson or Mr. Greene to appear before the court immediately. Upon hearing of these events, Philip Greene obtained a brief recess from the federal court proceedings, and he also attempted unsuccessfully to speak by telephone to the judge conducting the contempt hearing. According to the pleadings, Mr. Greene was

on his way to the state courthouse at the time the contempt hearing was being held.

At approximately 10:40 a. m., the judge announced that the contempt hearing would begin. Mr. Hiester protested that he was without counsel and asked that the judge wait a short time until Mr. Greene arrived. The request was refused, and Mr. Hiester was called and sworn as an adverse witness. After counsel for Mrs. Hiester had questioned both of the parties on direct examination, the following exchange took place:

The Court: Mr. Hiester, do you have any questions of your wife at this time?

Mr. Hiester: Uh, before any judgment would be made, I would prefer my counsel to be here, Your Honor. I'm not an attorney.

The Court: All right, Mr. Hiester, your attorney has not notified this court prior to this hearing, he gave no indication, and the fact that he is in the federal court or in some other court, the attitude again of you and your attorney has been contemptuous in this regard to this Court. And for your attorney to step inside the courtroom and not say one thing to either the clerk or the court, we're going to proceed on with your trial, and your wife's. Do you have any questions you want to ask your wife?

Mr. Hiester: Uh, not—no, Your Honor.

On further direct examination, Mr. Hiester attempted to explain that he had been out of work, had no money, and would gladly pay the child support if he were able, i. e., that he was unable to comply with the previous court order to make support payments. His explanation, however, was undocumented and was not presented as a formal defense as it might have been presented by an attorney.

The trial court then proceeded to make the following ruling:

The Court: . . . From the testimony that has been offered, Mr. Hiester, the court finds you in contempt, sets the arrearage at $5,500, sets your punishment at ten days in the county jail, to remain there until purged. You may purge yourself by paying the arrearage plus $300 attorney's fees, plus Court costs, this date.

A formal order of commitment was entered in accordance with this ruling, and Mr. Hiester unsuccessfully challenged that order in a writ of habeas corpus to the Houston Court of Civil Appeals, Fourteenth District.

Pursuant to the commitment order, Mr. Hiester was incarcerated on May 8, 1978. Upon this court's granting of his application for habeas corpus, he was released on bond pending further orders by this court.

The due process question presented by Mr. Hiester's case is not a new one. He was imprisoned for constructive, or out-of-court contempt, in that the sanction was imposed for his failure to obey a previous court order and the failure to pay child support was not in the presence of the court. In 1925, the Supreme Court of the United States made the following holding:

Due process of law . . . in the prosecution of contempt, except of that committed in open court, requires that the accused should be advised of the charges and have a reasonable opportunity to meet them by way of defense or explanation. *We think this includes the assistance of counsel, if requested,* and the right to call witnesses to give testimony, relevant either to the issue of complete exculpation or in extenuation of the offense and in mitigation of the penalty to be imposed. [Emphasis added]. *Cooke v. United States,* 267 U.S. 517, 537, 45 S.Ct. 390, 395, 69 L.Ed. 767 (1925).

This holding has been cited with approval in numerous Texas cases, and represents the law of this State. *Ex parte Ratliff,* 117 Tex. 325, 3 S.W.2d 406 (1928); *Ex parte Flournoy,* 158 Tex. 425, 312 S.W.2d 488 (1958); *Ex parte Davis,* 161 Tex. 561, 344 S.W.2d 153 (1961); *Ex parte Hosken,* 480 S.W.2d 18 (Tex.Civ.App.—Beaumont 1972).

The question then becomes whether Mr. Hiester was effectively denied the assistance of counsel in the present contempt

hearing. As stated in *Ungar v. Sarafite*, 376 U.S. 575, 589, 84 S.Ct. 841, 850, 11 L.Ed.2d 921 (1964),

> [I]t is not every denial of a request for more time that violates due process even if the party fails to offer evidence or is compelled to defend without counsel. *Avery v. Alabama*, 308 U.S. 444 [60 S.Ct. 321, 84 L.Ed. 377.] Contrariwise, a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality. *Chandler v. Fretag*, 348 U.S. 3 [75 S.Ct. 1, 99 L.Ed. 4.] There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied.

We therefore examine each case on its facts.

In circumstances similar to those in the present case, the Beaumont Court of Civil Appeals found that a denial of assistance of counsel constituted a denial of due process. *Ex parte Hosken*, 480 S.W.2d 18 (Tex.Civ. App.1972), involved a contempt hearing arising from a child custody order. When the case was called, the relator informed the court that his regularly retained counsel had been put to trial in a different city the previous day, and the relator informally asked for a postponement until that counsel could be present. The judge denied this request but allowed the relator to "go out and talk to some attorneys." Relator went into the hall and found an attorney who agreed to represent him in thirty minutes. The court, however, refused to grant the relator a thirty minute delay; and an order of commitment was entered. In original habeas corpus proceedings, the court of civil appeals held that the relator had been denied due process of law, based on many of the same authorities cited in the present opinion.

Mr. Hiester urges that the same holding is required in the present case, and we agree. The record before us demonstrates that Mr. Hiester went unrepresented through no fault of his own; he held a good faith belief that his attorney would only be delayed a short while. The statement of facts indicates that Mr. Hiester's demeanor toward the court was respectful and was not deliberately evasive. The record further shows that Philip Greene was the only attorney familiar with Mr. Hiester's case, and that Mr. Greene did indeed have a conflicting hearing in federal court. Because the contempt hearing proceeded as it did, Mr. Hiester was deprived of the right to have counsel present during his examination by opposing counsel, as well as the right to have counsel cross-examine the opposing witness and present any defenses Mr. Hiester may have had to the contempt charges, including a defense of inability to pay.

The trial court, in his statement quoted above, was of the view that both Mr. Hiester *and his counsel* had acted in a contemptuous manner. Whether such counsel acted contemptuously, or with censurable discourtesy to the trial court, is not before us. This opinion is not to be understood as approving the actions of Mr. Hiester's counsel, or of the practice involved. Our holding is that under the record before us, Mr. Hiester was not afforded due process when he was imprisoned and deprived of his liberty as the result of a constructive contempt proceeding where he was denied the benefit of counsel.

The relator is discharged.