**Ex parte, Leo Robert McINTYRE, Jr., Relator.**

**No. 04–86–00321–CV.**

Court of Appeals of Texas, San Antonio.

April 30, 1987.

412

David R. Weiner, San Antonio, for appellant.

Gary Howard, San Antonio, for appellee.

## OPINION

DIAL, Justice.

### ON RELATOR'S PETITION FOR WRIT OF HABEAS CORPUS

This is an original habeas corpus proceeding by which Leo Robert McIntyre, Jr., seeks his release from the Bexar County Jail. We have jurisdiction under TEX. GOV'T CODE ANN. § 22.221(d) (Vernon Supp.1987) where a person is restrained of his liberty because of violation of an order previously made in a divorce case or a wife or child support case. On the court's motion we are considering the matter en banc.

Under the provisions of a January 7, 1986, divorce decree, relator is required to make child support payments of $1,500.00 for his three children. Relator also was ordered in the divorce decree to pay arrearage in spousal and child support of $5,100.00 within 30 days and to release certain personal property to his former wife, Marian McIntyre.

On March 14, 1986, relator filed a motion to hold his former wife in contempt for violating the provisions of the divorce decree concerning his rights to visitation with his three children. On April 4, 1986, relator's former wife filed her motion to hold

relator in contempt for failure to pay child support, for failure to pay the $5,100.00 in past-due spousal and child support ordered by the divorce decree, and for refusing to turn over certain personal property awarded her in the divorce decree.

The court heard both motions for contempt on May 21, 1986. Relator appeared pro se at this hearing. After hearing testimony the court found that Marian McIntyre was "technically guilty" of violating the divorce decree and ordered her to faithfully comply with its visitation provisions. The court also found relator guilty of contempt for failing to pay child support for the months of March, April and May 1986, failing to pay $5,100.00 in back spousal and child support, and failing to surrender to his former wife personal property awarded to her. Relator was ordered confined in the Bexar County Jail for a period of 14 days, and thereafter until he "HAS: 1. PAID $9,600.00 TO THE MOVANT, MARIAN McINTYRE, AS CHILD-SUPPORT ARREARAGE: 2. PAID $150.00 AS COURT COSTS OF THIS PROCEEDING TO THE DISTRICT CLERK OF BEXAR COUNTY, TEXAS: 3. PAID $2,500.00 AS COURT COSTS OF THIS PROCEEDING TO GARY D. HOWARD, ATTORNEY FOR MOVANT."

In this original application for writ of habeas corpus relator challenges his confinement on several grounds. Relator initially argues that the contempt decree is void because he was not afforded assistance of counsel at the contempt hearing, and the record does not affirmatively reflect that he made a knowing, intelligent, and voluntary waiver of counsel.

In *Ex parte Lopez*, 710 S.W.2d 948 (Tex. App.—San Antonio 1986, no writ) (Reeves, J., concurring in part and dissenting in part) a panel of this Court held that in cases where an indigent is charged with contempt, is not represented by counsel and has not intelligently waived the right to assistance of counsel, a court may not, without violating the constitutional right to assistance of counsel, impose imprisonment as a punishment for disobedience of a child support order.

*Lopez* found that the right to counsel in contempt proceedings such as the present one, was grounded in the Sixth Amendment to the Constitution, as interpreted by the United States Supreme Court in *Argersinger v. Hamlin*, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972). *Lopez* noted that contempt proceedings are "criminal prosecutions," within the language of the Sixth Amendment to the extent that incarceration can be imposed without a "purge" condition or without a showing of the defendant's present ability to pay the accrued child support arrearage.

In *Ex parte Hosken*, 480 S.W.2d 18, 24 (Tex.Civ.App.—Beaumont 1972, no writ), a Sixth Amendment right to counsel was also found to exist in a contempt proceeding arising out of a violation of the visitation rights provisions of a divorce decree. In that case counsel had been retained but was unavailable when the contempt hearing was held.

The holding of *Hosken* that the Sixth Amendment did apply in a contempt hearing insofar as retained counsel was concerned was extended in *Ridgway v. Baker*, 720 F.2d 1409, 1413 (CA 5 1983), where the Court held that the right to counsel under the Sixth Amendment "extends to every case in which the litigant may be deprived of his personal liberty if he loses", and turns on whether deprivation of liberty may result from a proceeding, not upon its characterization as "criminal" or "civil." Unlike the case before us, the appellant in *Ridgway* requested appointment of counsel and made an uncontroverted assertion of indigency. However, neither of those two facts were dispositive of the Court's opinion, nor formed the basis for it.

The right to counsel under the Sixth Amendment was discussed by the Austin Court of Civil Appeals in *Ex parte Wilson*, 559 S.W.2d 698, 700–01 (Tex.Civ.App.—Austin 1977, no writ) but held not to be applicable because the relator was not indigent.

The absence of indigency also was a factor in *Ex parte Andrews*, 566 S.W.2d 668, 670 (Tex.Civ.App.—Houston [1st Dist.] 1978, no writ), where the Court commented

that the relator's argument that he was denied due process by the trial court's failure to provide counsel for him at a contempt hearing raised "serious constitutional questions." The Court declined to order the relator's release however, because the record did not show that he requested that the court appoint counsel to represent him or that he was indigent at the time of the hearing and unable to retain counsel.

The decision of the Court in *Andrews* appears to be based upon a Fourteenth Amendment-due process argument of entitlement to counsel and not a Sixth Amendment argument.[1] While this distinction may not seem of much importance at first blush, the Sixth Amendment right to counsel is absolute in any proceeding characterized as a "criminal prosecution." Under the Fourteenth Amendment, the right to counsel is determined on a case-by-case basis in the exercise of sound discretion by a judge or hearing officer. *Middendorf v. Henry*, 425 U.S. 25, 42–44, 96 S.Ct. 1281, 1291–92, 47 L.Ed.2d 556, 569 (1976); *Gagnon v. Scarpelli*, 411 U.S. 778, 789–91, 93 S.Ct. 1756, 1763–64, 36 L.Ed.2d 656, 666 (1973).

In the case before us, relator was found guilty of criminal contempt, inasmuch as he was sentenced to two weeks incarceration which he was ordered to serve without an opportunity to purge himself of contempt. *Ex parte Werblud*, 536 S.W.2d 542, 545 (Tex.1976). Our Supreme Court has declared that "a contempt proceeding is unlike a civil suit, has some of the incidents of a trial for crime, and is quasi-criminal in nature." *Ex parte Cardwell*, 416 S.W.2d 382, 384 (Tex.1967). Accordingly, proceedings in contempt cases should conform as nearly as practicable to those in criminal cases. *Ex parte Johnson*, 654 S.W.2d 415, 420, (Tex.1983); *Deramus v. Thornton*, 160 Tex. 494, 333 S.W.2d 824, 829 (1960). We agree that in cases where an indigent contemnor is not represented by counsel and has not knowingly, intelligently, and voluntarily waived the right to

assistance of counsel, a court may not impose imprisonment as punishment for failing to make Court ordered child support payments.

The record before us discloses that although relator proceeded pro se at the contempt hearing, he was fully aware of his right to counsel and was not indigent. Indeed, relator does not claim in in his application for writ of habeas corpus that he is indigent, but argues that the holding of *Ex parte Lopez* applies "without regard to the question of whether Relator was or was not an indigent." We disagree.

The record establishes that relator owns a $3,000.00 Rolex watch, had $700.00 in the bank on the date of the hearing, was presently leasing a $600.00 per month Mercedes-Benz, and that he owned other personal property. At no time did relator ask the court to appoint counsel.

While the better procedure at a contempt hearing would be for the judge to advise all contemnors of their right to counsel when they appear pro se at the contempt hearing and obtain a waiver of counsel for the record, the record clearly establishes that relator was aware of his right to be represented by an attorney at the hearing and that he was not indigent.

Relator next argues that he is entitled to habeas corpus relief because the evidence in the record of the contempt hearing does not establish beyond a reasonable doubt that he had the ability to make the child support payments. For support of this contention relator relies exclusively on the majority opinion of this Court in *Ex parte Lopez, supra*.

*Lopez* extended the above statement that contempt proceedings should conform as nearly as practicable to those in criminal cases. For the first time a Texas court held that the criminal standard of proof beyond a reasonable doubt must be applied in a contempt proceeding to a finding that the relator was affirmatively able to comply with the court's order. While recogniz-

---

1. *See also Ex parte Hiester*, 572 S.W.2d 300, 303 (Tex.1978), where the Court found a due process right to counsel but there was no discussion of the Sixth Amendment right to counsel apparently because the relator did not make this argument.

ing the relator's right to present evidence concerning his inability to comply, the *Lopez* majority said, "At the very least, where defendant produces some evidence of inability to pay, he should not be imprisoned unless there is evidence sufficient to support, beyond a reasonable doubt, the finding of ability to comply." *Ex parte Lopez,* 710 S.W.2d at 956.

This holding flies in the face of over 30 years of established Texas law. To be sure, one cannot be imprisoned where he is involuntarily unable to perform, but the burden has been placed on the relator to show that inability. *Ex parte Padfield,* 154 Tex. 253, 276 S.W.2d 247, 251 (1955); *Ex parte Kollenborn,* 154 Tex. 223, 276 S.W.2d 251, 254 (1955).

Texas Supreme Court did not expand their decisions in *Padfield* and *Kollenborn* to include an analysis of the problem. We feel such an analysis is a necessary prerequisite to our conclusion here.

The determination of who has the burden of proof on a particular issue should rest on broad considerations of fairness, convenience and policy, based upon experience in the varying situations. 1 Ray, Texas Law of Evidence § 43 (3rd ed. 1980). Relevant considerations include: (1) the interest of the relator that he not be confined for conduct beyond his control; (2) the interest of the State that court orders generally be obeyed and court-directed child support in particular be timely paid; (3) that there has been a prior determination, based on agreement or evidence, of a reasonable amount of support within relator's ability to pay, *Ex parte Lopez* 710 S.W.2d at 956; (4) that the Legislature has provided a means to modify a support order if the circumstances of the relator materially or substantially change, TEX.FAM.CODE ANN. § 14.-08(c)(2) (Vernon 1986); and (5) that the party who is best able to offer accurate evidence should have the burden.

We start with the premise that a judgment of contempt imposing coercive restraint is void if the conditions for purging the contempt are impossible to perform. Unless the contemnor has the means by which he may purge himself, he must be discharged from confinement. *Ex parte Ramzy,* 424 S.W.2d 220, 223 (Tex. 1968).[2]

May an individual who has been ordered to make regular child support payments simply ignore the court order as void if he now believes he is financially unable to comply? All would agree that orders and judgments of courts should be complied with. If a person believes the order is no longer correct, the remedy is to file a motion to modify the support order under TEX.FAM.CODE ANN. § 14.08(c)(2). Persons who make private determinations of the law and refuse to obey an order run the risk of contempt even if the order is ultimately ruled invalid. *Maness v. Meyers,* 419 U.S. 449, 458, 95 S.Ct. 584, 590–91, 42 L.Ed.2d 574, 583 (1975).

Having been cited for contempt for non-payment, the relator should not be permitted to sit back and require the movant to reestablish the ability to pay. One of the functions of the legal process is to minimize the risk of erroneous decisions. *Addington v. Texas,* 441 U.S. 418, 425, 99 S.Ct. 1804, 1809, 60 L.Ed.2d 323, 330 (1979). Both the interest of the relator to avoid unjust imprisonment and the interest of the movant and society that children be supported within the parents' ability dictates that accurate evidence be available to the trier of fact. The party who is in possession of the peculiar knowledge of the facts to be proved should have the burden of proof in this situation. *Dessommes v. Dessommes,* 505 S.W.2d 673, 679 (Tex.Civ.App. —Dallas 1973, writ ref'd n.r.e.). Since it is the relator's ability or inability that is in issue, his evidence would be first hand and more reliable.[3]

---

**2.** For excellent discussion of proof requirements in both civil (coercive) and criminal (penal) contempt orders for failure to pay child support see *Ex parte Papageorgiou,* 685 S.W.2d 776 (Tex. App.—Houston [1st Dist.] 1985, no writ).

**3.** The relator is not required to testify himself, but he may call relatives, former employers, business associates, or friends to testify to the facts necessary to establish inability. *Ex parte*

■ To put the burden on the movant would necessitate a period of discovery before the contempt hearing could be held. Often this would be complicated by the parties having moved their residence since the divorce. In the present case the relator still lives in San Antonio; the movant now lives in Missouri. A motion seeking enforcement of child support needs to be heard with dispatch and minimal expenses. Placing the burden on the movant would accomplish neither.

■ Involuntary inability to comply with the prior order is a defensive issue and should be treated as such. Even in strict criminal prosecutions the State is not required to negate an affirmative defense. The burden to prove an affirmative defense is placed on the criminal defendant by a preponderance of the evidence. TEX.PENAL CODE ANN. § 2.04(d) (Vernon 1974). Such requirements of burden of proof have been held not to violate constitutional due process. *Leland v. Oregon,* 343 U.S. 790, 72 S.Ct. 1002, 96 L.Ed. 1302 (1952). Placing the burden to prove inability to pay on the relator actually conforms the proceedings in contempt cases as nearly as practical to those in criminal cases. *Ex parte Johnson, supra.*

It would then be impractical to require the movant to reestablish the relator's ability to pay every time he (or she) is delinquent. The Dallas Court of Appeals said it well in *Whatley v. Whatley,* 493 S.W.2d 299, 303 (Tex.Civ.App.—Dallas 1973, no writ):

> The plea is by its nature defensive, and the burden should be on the father. A mother responsible for the care of minor children would have an intolerable burden if she has to establish anew the father's ability to pay every time she seeks the aid of the court to collect a payment past due.

Of course the best interest of the child is always the primary consideration of the

court in determining questions of support to the child, and in determining the best interest of the child the court shall consider the parents' circumstances. TEX.FAM. CODE ANN. § 14.07(a), (b) (Vernon 1986).

■ The term "burden of proof" is ambiguous in its application. We are here using it to mean the burden of persuading or convincing the trier of the facts on the issue of inability to pay the support required in a prior court order. 1 Ray, Texas Law of Evidence § 42 (3d ed. 1980). At a hearing on a motion for contempt, the movant first has the burden of introducing evidence that the respondent did not comply with the terms of the order sought to be enforced. This makes out a prima facie case of contempt. *Ex parte Snow,* 677 S.W.2d 147, 149 (Tex.App.—Houston [1st Dist.] 1984, no writ). In order to raise the defensive issue of impossibility to perform, the respondent then has the burden of producing evidence on the issue and the ultimate burden of proof.

The burden of proof is not to be confused with standard of proof. There are three standards or levels of proof for different kinds of cases in Texas, i.e., preponderance of the evidence, clear and convincing evidence, and proof beyond a reasonable doubt. The Legislature has spoken with clarity in this regard. In all suits affecting the parent-child relationship (except termination suits) the court's findings shall be based on a preponderance of the evidence under rules generally applicable to civil cases. TEX.FAM.CODE ANN. § 11.15(a) (Vernon 1986).

■ We hold that the respondent to a motion for contempt for failure to pay wife or child support has the burden of establishing by a preponderance of the evidence in the trial court the defense of involuntary inability.[4] To the extent that our opinion here conflicts with *Ex parte Lopez,* the holding in *Ex parte Lopez* is overruled.

*Hennig,* 559 S.W.2d 401 (Tex.Civ.App.—Dallas 1977, no writ).

**4.** Those cases that appear to require the defense of inability to pay be established "conclusively," *Ex parte Rohleder,* 424 S.W.2d 891, 892 (Tex.

1967); *Ex parte Roberts,* 582 S.W.2d 910, 912 (Tex.Civ.App.—Waco 1979, no writ), are speaking of the standard of review in appellate courts before entitlement to habeas corpus relief.

■ Relator's argument that the contempt order is void because the record does not affirmatively establish beyond a reasonable doubt his ability to make the child support payments is denied.

Relator next argues that the contempt order is void because the provisions of the divorce decree concerning the child support payments are not sufficiently specific to have advised him as to his duties under it. *See Ex parte Slavin,* 412 S.W.2d 43 (Tex. 1967).

The divorce decree provides:

It is ORDERED and DECREED that LEO ROBERT McINTYRE, JR. shall pay to MARIAN McINTYRE child support in the amount of Five Hundred Dollars ($500) per child, per month, with the first payment due and payable on December 1, 1985, and continuing thereafter until such time as LEO ROBERT McINTYRE, JR.'S obligation to pay child support for one or all of the parties' children shall cease by operation of law or by court order, provided, however, that if any child reaches the age of eighteen (18) but is still enrolled in an accredited primary or secondary school in a program leading to a High School diploma, the child support payment above set out shall continue until the end of the year in which the child graduates.

Relator complains that the decree is ambiguous, conjectural, and indefinite, in that it does not set out any specific time or manner in which he is to make the payments. We disagree.

■ Although the divorce decree does not specify the day of the month on which the child support payments are due, it is not void for that reason. *Ex parte McManus,* 589 S.W.2d 790, 793 (Tex.Civ.App. —Dallas 1979, no writ). Further, while the decree must set out the requirements for compliance in clear, specific, and unambiguous terms, *Ex parte Slavin, supra,* it need not completely negate every conceivable exercise of discretion by the contemnor in order to be enforceable. *Ex parte McManus, supra.* We are uncertain as to the precise meaning of relator's complaint that the decree does not set out the "manner" in which he was to perform the act of making the child support payments. To the extent that he is contending that the decree is void because it does not specify whether the payments are to be made by check or currency, or in person or by mail, we find no grounds for holding the decree void.

■ Relator makes the same arguments with respect to the personal property provisions of the divorce decree. We agree that they are not capable of being enforced by contempt. Relator was found guilty of contempt for refusing to surrender to the movant certain personal property awarded to her in the divorce decree. That decree, however, did not command that relator perform any act with respect to that property:

It is therefore ORDERED and DECREED that Petitioner, MARIAN McINTYRE, shall receive, and is hereby awarded, as her sole and separate property, free from any claim of Respondent, LEO ROBERT McINTYRE, JR. and Respondent is hereby divested of and interest in and to, the property described in Schedule I, which is attached hereto and made a part hereof.

Schedule I is captioned "PROPERTY AWARDED TO MARIAN McINTYRE," and among the items awarded to movant that it lists is included certain personal property set out in an attachment, "Exhibit A." Listed on Exhibit A, along with other items, are the possessions that relator was found to have refused to surrender to the movant.

This provision of the divorce decree divided the parties' community property but did not order relator to deliver these items to the movant or to undertake any action with regard to them. The lower court erred in finding that relator was in contempt for failing to surrender this property to the movant. *In re Hill,* 611 S.W.2d 457, 458 (Tex.Civ.App.—Dallas 1980, no writ); *Ex parte Chacon,* 607 S.W.2d 317, 319 (Tex. Civ.App.—El Paso 1980, no writ).

Although we find that we must reverse the finding of contempt for relator's refus-

al to surrender these items, we hold that he is not entitled to release from the coercive portion of his confinement.

Relator was found guilty of three acts of contempt for which one penalty of fourteen days confinement was imposed as a punishment. In addition to the punitive incarceration, relator also was ordered to remain in confinement until he paid child support arrearage, court costs, and attorney fees.

■■■■ Where one punishment is assessed for multiple acts of contempt, one of which is not punishable by contempt, the entire judgment is void. *Ex parte Davila,* 718 S.W.2d 281, 282 (Tex.1986). However, where the void portion of the judgment is severable, it does not vitiate the remainder. *Ex parte Karr,* 663 S.W.2d 534, 538 (Tex. App.—Amarillo 1983, no writ); *Ex parte Werner,* 496 S.W.2d 121, 122 (Tex.Civ.App. —San Antonio 1973, no writ); *Ex parte Lazaro,* 482 S.W.2d 12, 16 (Tex.Civ.App.— San Antonio 1972, writ dism'd).

■■ Since relator received fourteen days confinement for conduct including the failure to surrender the personal property, that portion of the contempt punishment is void and set aside. That void portion of the judgment is held to be severable from the coercive punishment related to payment of child support arrearage and court costs.

■■■ Finally, we find no merit to relator's argument that the contempt order is void because he was compelled to give testimony against himself at the contempt hearing in violation of his Fifth Amendment privilege against self-incrimination. Relator does not point out to this Court any testimony that he gave at the contempt hearing that is incriminating in nature. For the most part his testimony went to his ability to make the child support payments, an issue on which he had the burden of proof. Further, a *prima facie* case of contempt was made out by the movant before relator gave any testimony. Under these circumstances, relator's Fifth Amendment privilege against self-incrimination was not violated. *Ex parte Burroughs,* 687 S.W.2d 444, 446 (Tex.App.—Houston [14th Dist.] 1985, no writ); *Ex parte Snow, supra.*

Relator's request for habeas corpus relief is granted to the extent that the order directing confinement in the Bexar County Jail for a period of fourteen days is found to be void and is set aside. All other relief is denied. Relator is remanded to the custody of the Sheriff of Bexar County for confinement pursuant to the remainder of the court's order of commitment.

BUTTS, J., concurs.

CADENA, C.J., dissents, joined by ESQUIVEL and CANTU, JJ.

BUTTS, Justice, concurring.

*Sixth Amendment Right To Counsel*

While I concur there is a right to counsel in support contempt cases, I disagree with the holding that the Sixth Amendment right to assistance of counsel clause applies. I believe that is an improvident grant of the Sixth Amendment right. Before so easily applying that provision, this Court should consider two things: what is the real purpose of the contempt hearing in a child support case and is it necessary to decree a blanket extension of the Sixth Amendment right to counsel in these cases.

The underlying purpose of enforcement of child support orders is to protect the child's interests. The sole objective is not punishment of the nonpaying parent. In that regard it is not a "criminal prosecution" as contemplated by the Sixth Amendment provision. The duty to pay child support has already been determined; it derives from the parent/child relationship. Therefore, the parent is not charged with a crime, simply with not obeying the court's order of child support. The unseen participant at these hearings is the public, for the public benefits when the children of the community are supported by their parents, and it suffers when this is not done. Obviously there is more at stake in the enforcement proceedings than the trial court assuring itself that the nonpaying parent's rights are protected.

This is not to say that the nonpaying parent may not be entitled to representation by counsel at the hearing. By all means that entitlement must be recognized

by the trial court, and, on review, by this Court. But implicating the Sixth Amendment is not the way.

I doubt that this intermediate State court has the authority to interpret the United States Constitution Sixth Amendment right to counsel clause and hold it applies to contempt proceedings in child support cases. Assuming that we do, the majority would hold that the Sixth Amendment right to assistance of counsel clause mandates that counsel always be appointed for an indigent contemnor. What the court refuses to reckon with is that it may *say* this right is limited only to indigent contemnors, but that would not be the real result. Relator is correct when he argues that if the Sixth Amendment counsel clause does apply, the right to counsel also is his right, irrespective of his pecuniary status. The Equal Protection Clause of the Fourteenth Amendment assures that right to all contemnors, not just indigent ones, if the Sixth Amendment would apply.

Remember that *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) also spoke only of the *indigent* accused. However, after *Gideon*, in all felony trials, *all* defendants must have counsel, whether they are indigent or not, or they must follow strict procedures to waive counsel. Where there is likelihood of imprisonment in misdemeanor cases, all those defendants must also have counsel or waive the presence of counsel to assist them. *Argersinger v. Hamlin*, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972). *But see, Scott v. Illinois*, 440 U.S. 367, 99 S.Ct. 1158, 59 L.Ed.2d 383 (1979) (modifying the right which does not attach if defendant not actually sentenced to jail).

The process due an indigent contemnor derives from the Due Process Clause of the Fourteenth Amendment. It is this clause that the Supreme Court applied to protect juveniles charged with an offense, brought to trial, and facing possible imprisonment. *In re Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967). In addition, probation may be revoked only upon proof of a violation by a preponderance of the evidence.

Further, parole revocation does not invoke the Sixth Amendment right to counsel.

The court's statement that a contemnor would not be entitled to counsel [under the Sixth Amendment] when the evidence shows he is not indigent must fail. Because when the tentacles of that particular Sixth Amendment clause are followed to their logical ends according to constitutional law, counsel would be required for relator at trial. If the Sixth Amendment mandates counsel, and *any contemnor* did not waive that right, he must, perforce, be discharged.

*Lassiter v. Department of Social Services*, 452 U.S. 18, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981) is a termination of parental rights case, certainly a deprivation of great magnitude. In applying the protections of the Due Process Clause of the Fourteenth Amendment, the Supreme Court acknowledged the potential liberty loss involved and recognized the right to be represented by counsel at such a trial. However, the Court declined to hold that failure to appoint counsel in that particular case was error. It suggested that each case must be examined by the trial court on a case-by-case basis to determine when counsel should be appointed. It emphasized that fundamental fairness is the touchstone of the Due Process Clause and, in such cases, the court would balance private and public interests: the private interests at stake, the government's interest, and the risk that the procedures used will lead to erroneous decisions. *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

This is the flexible method permitted under the Fourteenth Amendment Due Process Clause. It demonstrates the procedural due process language employed now by the Supreme Court. It is the trial court which is in the best position to determine the need for appointed counsel in contempt cases. This is not a rigid formula with the costly rigid application and encumbrances of the Sixth Amendment. If we assume we have the authority to interpret the United States Constitution, why do we not hold that under the Due Process Clause of the

Fourteenth Amendment a trial court must always advise an indigent contemnor of his right to counsel and appoint one if one is requested or it determines one should be appointed. A trial court should also advise a non-indigent of his right to counsel, but would not be required to appoint counsel. Waiver forms would not be required, and costly undue delays would not result. Useless expense to the State and counties (the taxpayers) would be avoided, and constitutional rights would be protected. Just as important, the child's best interests would be protected.

Why should this Court do this unnecessary thing when the present Supreme Court does not apply the Sixth Amendment right to counsel to cases outside the realm of criminal prosecution. It is the Due Process Clause of the Fourteenth Amendment which would apply, not the Sixth Amendment.[1] Therefore I dissent to its application.

Under the Due Process Clause of the Fourteenth Amendment the facts of this case do not warrant appointment of counsel nor require written waiver of counsel. The result is correct according to that provision. However, the majority ruling, if upheld, will lead to a successful future collateral attack on that point (no waiver).

### Burden of Proof

The duty to support a child is imposed by the parent/child relationship. The contemnor has already been placed under a court order of support. The question before the Court is failure to obey the order. The contemnor may show the Court why it is impossible to comply.

I agree with the overruling of *Lopez*, which held that the movant in a child support contempt case must prove the contemnor had the ability to pay the support, and that the movant has the further burden of proving this beyond a reasonable doubt. While I have not examined all the state courts' decisions in the United States regarding placement of this burden, I have not found one which added this novel view

to that state's jurisprudence. Apparently this panel decision (one justice dissenting] stands alone. The law in Texas, as stated in the majority opinion, has been well established and approved by our Supreme Court. It is also the accepted law in other states. The burden is upon the obligor parent to establish that he or she does not have the ability to pay the child support which was previously ordered by the court.

This firmly established law may only be changed by the Supreme Court or our Legislature. In all likelihood either occurrence may be considered remote. The *Lopez* holding as to the burden of proof is correctly overruled.

CADENA, Chief Justice, dissenting.

While I agree that relator was not entitled to appointed counsel under the facts of this case and that he voluntarily and intelligently waived his right to be represented by retained counsel, I disagree with that portion of Justice Dial's opinion which concludes, contrary to the holding in *Ex parte Lopez*, 710 S.W.2d 948 (Tex.App.—San Antonio 1986, no writ), that the burden is on an alleged contemnor to prove that it was impossible to comply with the child support order or with the purging condition embodied in the contempt order.

Justice Dial correctly points out that contempt proceedings should conform as nearly as possible to criminal proceedings. But his conclusion that placing the burden of persuasion, or risk of nonpersuasion, on an alleged contemnor satisfies this requirement cannot be defended. In a criminal prosecution for nonsupport, the burden is on the State to prove, beyond a reasonable doubt, the ability of the accused to support his children, and the State of Texas cannot constitutionally provide that inability to support is an affirmative defense as to which defendant has the burden of persuasion. *Lowry v. State*, 692 S.W.2d 86 (Tex. Crim.App.1985). Stated differently, in a criminal case ability to pay is an element of the offense, while in a contempt proceeding

---

1. *See,* TEX. CONST. art. I, § 10, which sets out this State's "right to counsel" clause. Art. I,

§ 19 is the "Due Process Clause" of the Texas Constitution.

ability to pay, instead of being an element of the offense, is an affirmative defense. The difference between a criminal proceeding and a contempt proceeding is, indeed, a substantial one.

The resemblance between criminal proceedings and contempt proceedings is obvious. In both instances the purpose of the proceeding is to impose imprisonment or a fine, or both, as a sanction for violating a governmental command or prohibition. Insofar as the so-called criminal aspect of a contempt proceeding is concerned, the real party in interest is patently the State, since the purpose of the sanction is to punish for violation of an order of a state agency. The movant in a contempt proceeding has no interest in this aspect of the case, since punishment of the contemnor yields no benefit to the private movant. This much is clear from the many statements, such as the one found in *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 420, 31 S.Ct. 492, 492, 55 L.Ed. 797 (1911), that in the case of criminal contempt the "sentence" is punitive, "to vindicate the authority of the court", while in the case of civil contempt the imprisonment is "remedial", "for the benefit of the complainant."

Unless we are content with stopping after only a superficial analysis, it is apparent that the distinction between criminal and civil contempt is more imaginary than real. The purpose of the "remedial" imprisonment is intended to coerce the defendant to obey the order of the court. It is not for the benefit of the complainant but, in every sense of the word, has as its primary purpose compelling obedience with a governmental order. Dobbs, *Contempt of Court: A Survey*, 56 CORNELL L.REV. 183, 235–36 (1971). Since the primary purpose is to compel obedience to the prior order of the court, the benefit to the private complainant is, at best, incidental. It takes no great imagination to realize that, even in a case where the imprisonment is only punitive, as where the defendant is merely imprisoned for the permissible period of time without a purge condition, the imprisonment, although spoken of as being merely punishment for past offenses, will inevitably have the effect of inducing the defendant to comply with the court order in the future. Thus, even where the punishment must be viewed, under the traditional distinction, as punishment for criminal contempt, it has the incidental effect of bringing about a benefit to the private movant.

There are those who tirelessly invoke the old saw that, with respect to the coercive part of the order, the defendant "carries the keys to his prison in his pocket," apparently for the purpose of pointing out that such portion of a contempt order does not constitute punishment. But the Supreme Court of the United States has pointed out that, if the defendant is unable to comply with the purge condition, the purpose of the condition cannot be said to be to coerce compliance with the court's order. *See Maggio v. Zeitz*, 333 U.S. 56, 76, 68 S.Ct. 401, 411, 92 L.Ed. 476 (1948); *Ex parte Sanders*, 608 S.W.2d 343 (Tex.Civ.App.— Houston [14th Dist.] 1980, no writ). The truth is that the cliche is objectionably misleading because it conveys the idea that the defendant's confinement for civil contempt is, in fact, voluntary or self-inflicted and is not really confinement at all. It draws attention away from the fact that the sovereign has locked up the defendant who, to gain release, must comply with a command of the sovereign. In every important sense, the sovereign, not the defendant, retains control of the keys.

The entire contempt proceeding, irrespective of the labels used to camouflage the fact, is a situation in which the might and power of the sovereign is arrayed against the defendant. Not only may the court appoint an attorney to aid the claimant to obtain an order locking up the defendant, but in many instances the case is filed by a state agency which may be represented by a public prosecutor. There is a public wrong to be vindicated, since there has been an alleged defiance of a court order and, in fact, an alleged violation of a criminal statute. TEX.PENAL CODE ANN. § 25.05 (Vernon 1974). Even with tongue firmly in cheek is it difficult to characterize such a proceeding, the purpose of which is to incarcerate the defendant, as anything short of a criminal proceeding.

The opinion of Justice Dial shifts the burden of proof from the accuser to the accused by the simple expedient of holding that defendant's inability to make the required payments is an affirmative defense. The term "affirmative defense" is used to designate what a defendant must prove in order to mitigate, or exculpate himself from, the offense with which he is charged. At common law, the defendant bore the burden of persuasion as to all defensive issues. J. WIGMORE, EVIDENCE §§ 2485–87 (3rd ed. 1940). Since 1895, this rule has suffered considerable erosion in favor of the view which requires that the prosecution bear the risk of nonpersuasion throughout a criminal case. *Davis v. United States,* 160 U.S. 469, 16 S.Ct. 353, 40 L.Ed. 499 (1895). *See,* generally, Fletcher, *Two Kinds of Legal Rules: A Comparative Study of Burden of Persuasion Practices in Criminal Cases,* 77 YALE L.J. 880 (1968). In the latter half of the present century, a constitutional element has been injected into the controversy concerning the proper allocation of the burden of persuasion.

The current dispute can be traced to the holding in *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) that the burden is on the state to prove each element of the offense charged beyond a reasonable doubt. In *Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975), the Supreme Court treated what the state had statutorily classified as an affirmative defense as an element of the crime charged and held unconstitutional the Maine law which allowed a defendant to reduce murder to manslaughter if he established that he acted in the heat of passion produced by sudden provocation. In reaching this conclusion the Court stressed the degree to which the effort of Maine to classify the issue of sudden passion as an affirmative defense affected the defendant's interest in retaining his personal liberty. The Court did say, however, that a different result might be reached in situations where requiring the state to prove a fact less critical to guilt might impose a "unique hardship" on the prosecution. 421 U.S. at 702, 95 S.Ct. at 1891. This indicates that the Court was not intending to create a rule invalidating all affirmative defenses.[1]

In *Leary v. United States,* 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969), the Court held unconstitutional a statute defining a criminal offense whose elements were possession of illegally imported marihuana with knowledge of its illegal importation because the statute contained a presumption that proof of possession established guilt under the statute "unless the defendant explains his possession to the satisfaction of the jury." The Court held that there was no rational relationship between possession and knowledge of illegal importation. *Id.* at 53, 89 S.Ct. at 1557.

Justice Dial bases his conclusion that the defendant in a contempt proceeding should bear the burden of proving inability to comply on several considerations. Each of these "broad considerations of fairness, convenience and policy based upon experience in the various situations" will now be analyzed to determine if they support the conclusion reached by Justice Dial.

1. *The interest of relator that he not be confined for conduct beyond his control.* The key factor to be considered here is whether the conduct for which the defendant is being punished is voluntary conduct. For this reason, absent defendant's ability to comply, a purge condition in a contempt order is void. *Maggio v. Zeitz, supra.* With rare exceptions, our society

---

1. Two years later the Supreme Court upheld a New York statute which provided that a defendant charged with murder could mitigate his offense to manslaughter if he proved by a preponderance of the evidence that he had acted under the influence of extreme emotional distress. *Patterson v. New York,* 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977). The Court found significant differences between the Maine and New York statutes which it concluded made *Mullaney* inapplicable. Unlike *Mullaney* the offense of murder under the statute challenged in *Patterson* required proof only of an intentional killing and allowed an affirmative defense by proof of factors which did not constitute an element of the offense. This, the Court reasoned, was very different from requiring the defendant to negate the existence of malice as required by the Main statute in *Mullaney. Id.* at 216, 97 S.Ct. at 2330.

does not punish conduct unless that conduct is both voluntary and the result of a culpable mental state. The Texas Penal Code specifies that, unless the definition of an offense plainly dispenses with a mental state, a person commits an offense only if he voluntarily engages in an act or omission and does so with a culpable mental state. TEX.PENAL CODE ANN. §§ 6.01, 6.02 (Vernon 1974). Thus, both statute and case law evidence the importance attributed to the factor of whether the act committed was voluntary.

Justice Dial, while giving lip service to this concept, dismisses its importance by focusing instead upon the desirability of obtaining reliable evidence and the inconvenience of requiring the movant to obtain discovery. The due process provisions of our constitution may be "inconvenient" and "impractical" but that is because personal liberty is of primary importance.

The interest in personal liberty cannot be so lightly dismissed. In *Lassiter v. Department of Social Services*, 452 U.S. 18, 25, 101 S.Ct. 2153, 2158–59, 68 L.Ed.2d 640 (1981), the Supreme Court said, "[I[t is the defendant's interest in personal freedom, and not simply special Sixth and Fourteenth Amendments right to counsel in criminal cases which triggers the right to appointed counsel." The Court also noted that the defendant's interest in liberty of his person creates a presumption that he is entitled to court-appointed counsel. This interest in personal liberty may justifiably be regarded as second in importance only to the interest in life.

2. *The interest of the state that court orders be obeyed, particularly orders directing the payment of child support.* Of course, the state has an interest in insuring that provisions of the Penal Code be enforced, but it cannot be concluded that the interest of the state in preventing criminal offenses outweighs the interest of the accused in avoiding imprisonment for conduct beyond his control. Otherwise, in murder prosecutions the state could rightfully saddle the defendant with the burden of persuasion concerning intent to kill and the presence of provocation resulting in heat of passion. We know that the Texas law concerning burden of proof with reference to heat of passion is to the contrary. *Bradley v. State*, 688 S.W.2d 847 (Tex.Crim.App. 1985). Would anyone seriously suggest that a state could define murder in such a way as to include all killings unless defendant proved that he did not intend to kill? Is the prosecution of homicide less important than the enforcement of orders pertaining to child support?

3. *Prior determination of relator's ability to pay a specified sum of child support.* This prior finding, of course, was the one made in the divorce action. But we must not stretch the doctrine of res judicata too far. Judicial factual determinations are made ex post facto and are applicable only to facts in existence prior to or on the date of the judgment which is based on such factual determinations.

Here, even assuming that relator was able to make each monthly payment as it became due, the coercive portion of the contempt order which requires his continued incarceration until he pays the arrearage of $5,100.00 cannot stand. Certainly, it must be conceded that his failure to make payments as they fell due cannot be viewed as establishing his ability to pay the sum of the periodic payments which he failed to make.

It is also significant that the factual findings in the divorce case are based merely on proof by a preponderance of the evidence, rather than proof beyond a reasonable doubt, which is the quantum of proof required in cases where defendant's liberty is at stake. If we are to ignore the difference in the required degree of proof, it could justifiably be argued that an indictment furnishes sufficient basis for relieving the state of the burden of persuasion as to elements of the crime, or at least, that the return of an indictment establishes the existence of probable cause to believe that defendant is guilty.

4. *The Legislature has provided for modification of support orders.* In a contempt hearing we are dealing with defendant's present ability to comply with a previous support order. The fact that he could

have moved to modify the order is irrelevant on the question of his present ability to comply with the existing order.

5. *Burden on party best able to offer accurate evidence.* This is the "comparative convenience test" first formulated by Justice Cardozo in dictum in *Morrison v. California,* 291 U.S. 82, 88–91, 54 S.Ct. 281, 284–85, 78 L.Ed. 664 (1933). In *Tot v. United States,* 319 U.S. 463, 63 S.Ct. 1241, 87 L.Ed. 1519 (1943) the Court said that the relative convenience test was merely a "corollary" to the rational connection test and that the latter was controlling, since the relative convenience test could not save a presumption from constitutional infirmity in the absence of a rational connection between the fact proved and the fact presumed. This proposition was affirmed in *Leary v. United States, supra.*

In every criminal case the defendant has at least an equal familiarity with the facts and in most cases a greater familiarity with them than the prosecution. It is probably true that the defendant always knows more about his connection with the crime than does the prosecution. In *Tot v. United States, supra,* the Supreme Court held that because of these circumstances it might be argued that it would be proper in all criminal cases to place on defendant the burden of producing evidence, but the court pointed out that if this argument were sound, the legislature might validly command that the finding of an indictment, or mere proof of the identity of the accused should create a presumption of the existence of all facts necessary to establish guilt. "This," said the Court, "is not permissible." 319 U.S. at 469, 63 S.Ct. at 1246. If it is not permissible to place the burden of producing evidence on defendant because of convenience, then it certainly should not be permissible to shift the burden of persuasion on the basis of convenience. It is not easy to understand the argument which justifies depriving a person of his liberty in order to avoid inconveniencing his opponent.

Justice Dial speaks of allocating the burden of persuasion on the "basis of experience in the various situations." The word "experience" appears to refer to the judicial estimate of the probabilities, based on experience. When we speak of a judicial estimate of the probabilities, it would appear that we are referring to the "rational connection test" applied in *Tot* and *Leary.*

What has been our experience concerning the coexistence of fact A (non-payment) and fact B (ability to pay)? In this case, we are asked to accept proof of non-payment as proof of ability to pay. There is no rational connection between non-payment and ability to pay. Stated differently, proof of the existence of fact A (non-payment) is no evidence whatever of the existence of fact B (ability to pay). The proposition, "If A then B" has no basis in experience. The correlation between A and B is too low to justify shifting the burden of producing evidence and is necessarily insufficient to justify shifting both the burden of producing evidence and the burden of persuasion.

Before a presumption can be constitutionally valid, a high degree of precision must be required. There must be significant rational relationship between the fact proved and the fact presumed. Where we are dealing with an affirmative defense which, unlike a presumption, shifts not only the burden of producing evidence, but also the burden of persuasion, the correlation should be significantly higher than that required for upholding a presumption.

In *Western and Atlantic RR v. Henderson,* 279 U.S. 639, 49 S.Ct. 445, 73 L.Ed. 884 (1929), the Supreme Court held that a statute requiring a railway defendant to establish an absence of negligence by a preponderance of the evidence once the plaintiff proved an injury resulting from a railroad collision violated the due process clause of the constitution because there was no rational basis between the fact proven and the presumption of negligence. The Court distinguished its holding in *Henderson* from its earlier decision in *J. & K.C.R. Co. v. Turnipseed,* 219 U.S. 35, 43, 31 S.Ct. 136, 138, 55 L.Ed. 78 (1910) noting that the statute in *Turnipseed* required only that the defendant present *some* evidence refuting negligence.

In this case, forcing the defendant to prove his inability to pay by a preponderance of the evidence once the movant has established a failure to pay is as arbitrary and unconstitutional as it was in *Henderson.*