In re Keith MONROE.

UNITED STATES of America,
Plaintiff-Appellee,

v.

Adelle Raye WHITE and Jerald E. Evers,
Defendants-Appellants.

No. 76–1194

Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

May 27, 1976.

James D. Riddet, Roger S. Hanson, Santa Ana, Cal., for defendants-appellants.

John E. Clark, U. S. Atty., Le Roy Morgan Jahn, Asst. U. S. Atty., San Antonio, Tex., for plaintiff-appellee.

Before GODBOLD, DYER and CLARK, Circuit Judges.

PER CURIAM:

Monroe, an attorney licensed to practice in California, and retained to represent defendant White in a criminal case in the Western District of Texas, was found in contempt of court after he failed to appear for trial in El Paso, Texas, on December 8, 1975. He was unable to appear

---

* Rule 18, 5 Cir.; See *Isbell Enterprises, Inc. v. Citizens Casualty Company of New York et al.*, 5 Cir. 1970, 431 F.2d 409, Part I.

because on that date he was engaged in trial before a jury in California of a murder case which had commenced on August 18 and was not concluded until after December 8.

The actions, and inactions, of Monroe simply do not rise to the level of contempt. The District Judge recognized that it was physically impossible for Monroe to be in two trial courts at the same time. His conclusion that Monroe was guilty of contemptuous and contumacious conduct appears to be based on Monroe's failure to timely file a motion for continuance at least ten days before the trial date, as apparently required by local rules, coupled with delay in failing to secure local counsel.

Monroe mailed a motion for continuance to the District Court on Friday, November 28, 1975, with a copy to the United States Attorney in El Paso. It was received and filed by the court on Monday, December 1, 1975, a week before trial date. The motion was first called to the trial judge's attention on Thursday, December 4, or Friday, December 5, and was denied December 5. With respect to the untimeliness of this motion, the only delay which may properly be attributed to Monroe was from around November 24, when he was informed by local co-counsel that he, Monroe, should file a written motion presenting to the trial judge the matter of the conflicting trials, and November 28 when Monroe mailed the motion. It is not disputed that prior to November 24 the matter of Monroe's conflict in trial engagements was in the hands of local co-counsel who had advised Monroe that it would be presented at arraignment on November 21. At arraignment co-counsel made a judgment decision that the matter should not be presented. The arraigning judge was not the trial judge, and co-counsel's opinion was that the arraigning judge would not act on the matter but rather that, under the circumstances, it would have to be presented to the trial

judge in the form of a written motion filed by Monroe himself. Presumably a motion prepared and mailed in California around November 24 or 25 would have reached the court at least ten days before December 8. The motion mailed November 28 did not. Accepting that Monroe should have acted more speedily, there was but a three or four-day delay—one day of which was Thanksgiving Day, November 27—occurring while Monroe was engaged in the trial of a murder case that had been in progress for more than three months. The fact of his inaction does not alone contain the elements of intentional or willful action or flagrant disregard of the court's rules or orders necessary for contempt. At most it was negligence. Central to this point is the fact that during this delay period Monroe had local co-counsel who could, as far as was then known, represent White at trial commencing December 8 if a motion by Monroe for continuance should be denied. Also it was not established that Monroe had actual knowledge of the ten-day rule or that local counsel advised him of it.

With respect to the delay in securing local counsel, early in the proceedings Monroe retained as local co-counsel the attorney representing the co-defendant Evers. That attorney was with Monroe at an earlier trial setting in July,[1] and appeared alone at arraignment of both defendants on November 21, and advised Monroe how to handle the matter of the conflict in trial engagements. On or about December 2 or 3, after Monroe's motion for continuance had been filed and before it had been acted upon, Monroe was advised by telephone by the local counsel that he was filing a motion to withdraw from representation of White because events had surfaced which revealed a potential conflict of interests between the two defendants. That motion was filed December 3. Monroe was notified by a clerk of the court on Friday, December 5, that his motion for continuance was denied and that in view of the pending motion of co-counsel

---

1. Both attorneys appeared on July 21 and announced both defendants ready for trial. When trial was ready to commence on July 22 the government moved to dismiss the indict- ment and the motion was granted. Subsequently a new and identical indictment was returned.

to withdraw he must either be present himself on December 8 or arrange for other local counsel. Monroe told the clerk that he knew of the motion to withdraw and was already attempting to secure new local counsel. At the contempt hearing Monroe testified that he continued those attempts over the weekend but without success.[2]

The government acknowledged in the District Court, and does here, that the possibility of a conflict of interest was bona fide. One might have at least a glimmer of a suspicion that the court was being whipsawed between Monroe and the local co-counsel. The record does not, however, support any inference to that effect, and the District Judge drew no such inference. Indeed the judge does not seem to have questioned the actions of the local attorney, who must bear part of the fault for the belated motion for continuance,[3] and, if there was any fault in the belated discovery of a conflict of interest, it was primarily his.

We have addressed ourselves to the merits because as a matter of law there was no contempt. If we had not done so it would have been necessary at a minimum to vacate the judgment and remand the case because we are unable to determine from the record whether the contempt proceeding was civil or criminal in nature. The order of the District Court finding Monroe's conduct contemptuous recited as authority Rule 42(a), Federal Rules of Criminal Procedure, which rule refers solely to summary criminal contempt proceedings. That same order imposed a punitive fine. On the other hand, the District Judge stated at the hearing to show cause, "I'm going to again find your conduct utterly and totally contumacious and contemptuous of this Court. I'm not going to in any manner charge you with criminal contempt however . . . . And I'm going to treat this as a civil contempt matter and not a criminal contempt matter."

 In order for a judgment of contempt to stand, it must be clear whether the proceeding was civil or criminal in nature. *Skinner v. White*, 5 Cir. 1974, 505 F.2d 685. As stated in *Clark v. Boynton*, 5 Cir. 1966, 362 F.2d 992, 994:

> The simple fact is that no one . . . is able to determine whether this was begun, tried, or ended as a case for criminal contempt, civil contempt, or both, or whether some place down the trail, begun as one it was transmuted into the other. This is, of course, one thing about which there may not be any doubt if a contempt order is to stand.

The judgment is REVERSED.

---

**2.** The District Judge had the impression that Monroe had been told of co-counsel's conflict of interest prior to December 2 or 3. The record does not support that impression.

**3.** He acknowledged to the court that he might have made a mistake in judgment in not presenting the matter to the arraigning judge, and he apologized to the court therefor.