Ex parte Bernardo **EURESTE.**

No. 69473.

Court of Criminal Appeals of Texas, En Banc.

Dec. 23, 1986.

George Scharmen, San Antonio, for applicant.

Sam D. Millsap, Jr., Dist. Atty. and Michael Schill and Charles Estee, Asst. Dist. Attys., San Antonio, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

ONION, Presiding Judge.

These proceedings involved an original application for writ of habeas corpus filed in this Court.

In March of 1985 the Grand Jury in the 144th District Court of Bexar County was investigating possible violations of the state election laws. Applicant, at the time, was a city councilman for the City of San Antonio. He was an apparent focus of the grand jury's investigation. The grand jury issued a subpoena duces tecum which ordered applicant to appear before the grand jury and to bring with him certain records which applicant was required to keep under the Texas Election Code.

Applicant personally appeared before the grand jury as ordered but refused to deliver certain of the requested documents, claiming the delivery would violate his privilege against self-incrimination under both the State and Federal Constitutions. Article I, § 10, Tex. Const.; Fifth Amendment, United States Constitution.

After several motions were filed and hearings conducted before Judge Roy Barrera, Jr. of the 144th District Court, the applicant was held in contempt and ordered to pay a $500.00 fine before 5 p.m. on the date of the last hearing, March 15, 1985. Judge Barrera later ordered an extension of the time of the deadline to 5 p.m. on March 18, 1985. On the 18th day of March, applicant filed his original application for writ of habeas corpus with this Court. This Court ordered the contempt proceedings stayed.

After reviewing the facts and circumstances, this Court determined that it had no jurisdiction to entertain the habeas corpus application as applicant was not in custody or restraint by virtue of the contempt order. See *Ex parte Eureste* (unpublished order in No. 14–706–02, May 8, 1985).

On May 17, 1985, applicant filed a second original application for writ of habeas corpus in this Court repeating the earlier contentions concerning his constitutional privilege against self-incrimination. He further alleged under oath that on May 14, 1985, at 7 p.m., he had been arrested when a capias pro fine issued out of the 144th District Court had been executed, and that he had refused to pay the fine and was now in custody. No request was made to be released on a habeas corpus bond, see Article 11.32, V.A.C.C.P., pending proceedings on his application.

On May 29, 1985, this Court, relying upon the sworn allegations of "custody" granted the motion for leave to file the habeas application, issued the writ, and filed and set the matters for oral argument. At oral argument on June 26, 1985 before this Court, it was uncovered that the applicant was free on a bond of some sort approved by Judge Pat Priest of the 187th District Court on May 15, 1985, prior to the filing of the second habeas application in this Court.

By supplemental transcript from the 144th District Court, we later learned that applicant was arrested on May 14, 1985 at 7 p.m. and placed in jail pursuant to the capias pro fine issued from said court. And that on May 15, 1985, the applicant filed in Cause No. 85–W–72 in the 144th District Court an "Application for Bond Pending Prosecution of Original Writ of Habeas Corpus Before Court of Criminal Appeals of Texas." Said application prayed the district court set a sufficient bond "pending application for rehearing and reprosecution of said application for writ of habeas corpus which will guarantee the appearance of movant and faithful prosecution of said action."

On the same date (May 15, 1985), the application was heard before Judge Pat Priest of the 187th District Court. Judge Priest granted said application and entered an order that permitted applicant to post a personal bond in the amount of $1,200.00. It does not appear whether Judge Priest was acting for Judge Barrera, or that there was an exchange of benches, etc., or that he was acting as Judge of the 187th District Court. The order was just signed "Pat Priest, District Judge."

On the same date (May 15, 1985), the applicant executed a personal bond of $1,200.00 approved by Judge Priest. Said

bond recited applicant "is pursuing an original writ of habeas corpus to the Court of Criminal Appeals of Texas" and then stated:

"Now, if I, the said Bernardo Eureste shall faithfully appear and prosecute said appeal (sic) before the Court of Criminal Appeals of Texas there to remain in attendance from day to day and term to term until discharged by order of the Court...."

Applicant was then released on said "bond." Two days later, May 17, 1985, while free on "bond," applicant filed a motion for leave to file his second application for writ of habeas corpus with this Court. In said motion for leave applicant noted that his first habeas application was dismissed because he was not in custody, and that now he was in custody, having been arrested on May 14, 1985. As earlier noted, no mention was made that he was now on "bond." The pleadings left the impression that applicant was still in jail.

■ There is no remedy or right of appeal from an order of contempt. *Ex parte Rose*, 704 S.W.2d 751 (Tex.Cr.App.1984); *Ex parte Jacobs*, 664 S.W.2d 360 (Tex.Cr. App.1984); *Ex parte Ramsey*, 642 S.W.2d 483 (Tex.Cr.App.1982); *Ex parte Moorehouse*, 614 S.W.2d 450 (Tex.Cr.App.1981); *Ex parte Supercinski*, 561 S.W.2d 482 (Tex.Cr.App.1977); *Arnold v. State*, 493 S.W.2d 801 (Tex.Cr.App.1973); *Ex parte Cardwell*, 416 S.W.2d 382 (Tex.Cr.App. 1967). Thus, there can be no valid appeal bond in such situations.

The proper course of review from a contempt order entered in a district court is by original application for writ of habeas corpus. Article V, § 5, Tex.Const., as amended 1977. See *Ex parte Moorehouse*, supra; *Ex parte Ramsey*, supra.

Article 11.32, V.A.C.C.P., provides:

"When the return of the writ has been made, and the applicant brought before the court, he is no longer detained on the original warrant of process, but under the authority of habeas corpus. *The safekeeping of the prisoner, pending the examination or hearing is entirely under the direction and authority of the judge or the court issuing the writ,* or to which the return is made. He may be bailed from day to day, or be remanded to the same jail from whence he came, or to any other place of safekeeping under the control of the judge or court, till the case is finally determined." (Emphasis supplied.)

■ This Court, having issued the writ of habeas corpus, is the only court that may determine whether the applicant may be allowed bail or required to remain in jail. The district court, either before the filing of the habeas corpus application or after the issuance of the writ by this Court, was without authority to permit bail, and approve the bond. The bond not being authorized, the undertaking is not valid, and is not subject to proper forfeiture of bail.

It is true that in *Ex parte Trillo*, 540 S.W.2d 728 (Tex.Cr.App.1976), it was held one may be "in custody" for habeas corpus purposes even though he is out on bail or personal bond. This holding, however, does not have reference to an obviously invalid bond.

Applicant is not under restraint under the contempt order attacked in his habeas application nor by the invalid bond entered into in the district court. Thus, the original habeas corpus jurisdiction of the Court of Criminal Appeals has not been properly invoked. The habeas corpus proceedings are dismissed.

CLINTON, Judge, dissenting.

The function of The Great Writ is to provide a remedy when any person is restrained in his liberty. Article 11.01, V.A. C.C.P. Constitutionally guaranteed, it is "a writ of right, and shall never be suspended;" the Legislature has enacted laws "to render the remedy speedy and effectual." Article I, Sec. 12. See Chapter Eleven, V.A.C.C.P., every provision of which "shall be most favorably construed in order to give effect to the remedy, and protect the rights of the person seeking relief under it." Article 11.04, V.A.C.C.P.

Today, one year and more than nine months since applicant filed his first origi-

nal application for writ of habeas corpus in this Court, his endeavors to achieve relief are frustrated by an exultation of form over substance such as to shame The Great Writ. There is no effort to construe "most favorably" legislative provisions intended and designed to give effect to the remedy and protect his rights, procedural rules and caselaw relating to amending defective bonds or any other notions of fairness and equity that serve to implement habeas corpus. Instead, the Court critically orders the proceedings dismissed.*

Adhering to the ageless maxim about "justice delayed," I dissent.

---

* For whatever it is worth, the fact of the matter is that we were informed as early as May 15, 1985, that applicant had been released on bond. Since this Court had not so ordered, the only conclusion for us to reach was that some other court had. Rather than utilize its constitutional power "upon affidavit or otherwise to ascertain such matters of fact as may be necessary to the exercise of its jurisdiction," Article V, Sec. 5, para. 3, we caused the Court to adhere to its adverse order, without prejudice to a fresh petition—the one that is now being dismissed, primarily for want of a bond acceptable to the majority.