FILED
*September 11, 2015*
Third Court of Appeals
Jeffrey D. Kyle
Clerk

ACCEPTED
03-14-00270-CV
6855539
THIRD COURT OF APPEALS
AUSTIN, TEXAS
9/9/2015 5:08:33 PM
JEFFREY D. KYLE
CLERK

**No. 03-14-00270-CV**

RECEIVED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
9/9/2015 5:08:33 PM
JEFFREY D. KYLE
Clerk

# IN THE COURT OF APPEALS FOR THE THIRD DISTRICT OF TEXAS

## IN RE CHRISTOPHER L. GRAHAM

On Appeal from the 207th Judicial District Court of Comal County, Texas
Cause No. CR2013-366
Honorable Gary Steel, District Judge Presiding

## BRIEF FOR THE STATE

**Jennifer Tharp**
**Criminal District Attorney**

**By**
**Daniel Palmitier**
**SBN: 24062934**
**Assistant District Attorney**
**150 N. Seguin Avenue, Suite #307**
**(830) 221-1300**
**Fax (830) 608-2008**
**New Braunfels, Texas 78130**
**E-mail: preslj@co.comal.tx.us**
**Attorney for the State**

**Oral Argument Is Requested**

## Identity of Parties and Counsel

**Attorneys for the Appellant Christopher L. Graham**

**AT TRIAL & ON APPEAL**
Christopher L. Graham
P.O. Box 226265
Dallas, Texas
Telephone: (469) 605- 6846
Email: clgraham@lgi-law.com

**Attorneys for the Appellee, The State of Texas**

**AT TRIAL & ON APPEAL**
Daniel Palmitier
Assistant District Attorney
COMAL COUNTY CRIMINAL DISTRICT ATTORNEY'S OFFICE
150 N. Seguin Avenue, Suite 307
New Braunfels, Texas 78130
Telephone: (830) 221-1300
Facsimile: (830) 608-2008
Email: palmid@co.comal.tx.us

# Table of Contents

Index of Authorities ....................................................................................... iv

Statement of Facts .......................................................................................... 1

Summary of the Argument ............................................................................. 4

**Only the Trial Court and Court of Criminal Appeals Have Original Habeas Corpus Jurisdiction** ............................................................. 4

**Appellant Can Not Invoke the Original Habeas Corpus Jurisdiction of the Court of Criminal Appeals** ......................................................... 5

*Standard of Review for Contempt Order* ...................................... 7

**Appellant's Conduct Rose to the Level of Criminal Contempt** ................ 7

**Appellant Was Not Entitled to Court-Appointed Counsel at His Contempt Hearing** ............................................................................... 13

**Appellant Was Not Compelled to Testify at His Contempt Hearing** ..... 14

**Appellant Was Not Entitled to a Jury Trial** .............................................. 15

**Appellant's Due Process Rights Were Not Violated When His Show Cause Hearing Was Transferred to Judge Shaver** .................................. 17

**Appellant's Punishment Is Supported by the Record** .............................. 20

Prayer ............................................................................................................ 22

Certificate of Service .................................................................................... 23

Certificate of Compliance ............................................................................. 23

# Index of Authorities

## Cases

*Brown v United States,* 356 U.S. 148 (1958).........................................................9-12

*Cortes v. State,* 14-99-01194-CV, 2000
WL 328500, at *1 (Tex.App.—Houston
[14 th Dist.] Mar. 23, 2000, no pet.) (mem.
Op., not designated for publication) ...............................................................5

*Denby v State*, 627 S.W.2d 435 (Tex.App.,
Houston [1st Dist.] 1981, no pet.), cert. denied,
462 U.S. 1110 (1983).................................................................................5

*Ex parte Alakayi,* 102 S.W.3d 426 (Tex.
App.—Houston [14th Dist.] 2003, pet. ref'd)......................................................19

*Ex parte Aldridge, 334* S.W.2d 161 (1959) ...............................................................5

*Ex parte Butler,* 372 S.W.2d 686 (Tex. Crim.
 App. 1963) ..............................................................................................8,9

*Ex parte Cooper,* 657 S.W.2d 320 (Tex. Crim.
App. 1983)..............................................................................................8

*Ex Parte Eureste,* 725 S.W.2d 214 (Tex. Crim.
App 1986).............................................................................................6

*Ex parte Hardin, 344 S.W.2d 152 (1961)* ...............................................................8

*Ex parte Hearon*, 3 S.W.3d 650 (Tex. App.
—Waco 1999, no pet.) ...............................................................................5

*Ex parte Hosken,* 480 S.W.2d 18 (Tex. Civ.
 App.—Beaumont 1972, no writ) ...................................................................8

*Ex parte McIntyre,,* 730 S.W.2d 411 (Tex.
App.—San Antonio 1987, no writ)................................................................14

*Ex parte Murphy,* 669 S.W.2d 320 (Tex.
Crim. App. 1983) ..................................................................................7,8,12,20

*Ex parte Privitt,* 77 S.W.2d 663 (1934).................................................................8

*Ex parte Reposa,* AP-75,965, 2009 WL
3478455, at *4 (Tex. Crim. App. Oct.
28, 2009) (not designated for publication)...............................................7,8,18,20,21

*Ex parte Rutherford,* 556 S.W.2d 853
(Tex.Civ.App.—San Antonio 1977, no writ) ...........................................................4

*Ex parte Sproull*, 815 S.W.3d 250 (Tex. 1991) ....................................................15

*Ex parte Trillo,* 540 S.W.2d 728 (Tex. Crim.
App. 1976)..............................................................................................................6

*Ex parte Vogler,* 9 S.W.2d 733 (1928) ....................................................................8

*Ex parte Werlbud,* 536 S.W.2d 542
(Tex. 1976)) ...........................................................................................................8

*Ex parte Young*, 257 S.W.3d 276 (Tex. App.
—Beaumont 2008, no pet.)..................................................................................5

*Ex parte Wilson,* 559 S.W.2d 698 (Tex. Civ.
App.—Austin 1977, no writ) ...............................................................................8

*Garcia v. State,* 07-02-0358-CR, 2004
WL 2578097, (Tex. App.—Amarillo
Nov. 12, 2004, no pet.) (not designated
for publication).....................................................................................................19

*Ieppert v. State,* 908 S.W.2d 217 (Tex. Crim. App. 1995) ...................................................18

*In re Brown,* 114 S.W.3d 7 (Tex. App. —Amarillo 2003, no pet.) ..................................14,15,16

*In re Farquhar,* 492 F.2d 561 (D.C. Cir. 1973) ...................................................8

*In re Francis,* 09-11-00116-CV, 2011 WL 3847447, (Tex. App.—Beaumont Aug. 31, 2011, no pet.) (mem. op., not designated for publication) ...................................................19

*In re Graham,* 03-14-00270-CV, 2014 WL 5107134, (Tex. App.—Austin Oct. 9, 2014, no pet.) (mem. Order, not designated for publication) ...................................................13

*In re Monroe, 532* F.2d 424 (5th Cir. [Tex] 1976...................................................9

*Lucero v. State,* 91 S.W.3d 814 (Tex. App.—Amarillo 2002, no pet.) (Quinn, J., concurring) (citing Harrison v. United States, 392 U.S. 219, 223 (1968))...................................................15

*McCarroll v. Texas Dept. of Public Safety,* 86 S.W.3d 376 (Tex.App.-Fort Worth 2002, no pet.) ...................................................19

*Rogers v. State, 640 S.W.2d 248* (Tex. Crim. App. 1981)(op. on reh'g) ...................................................19

*State ex rel. Wilson v. Briggs,* 351 S.W.2d 892 (1961)...................................................4

*State ex rel. Wilson v. Briggs,* 351
S.W.2d 892 (1961) ........................................................................4

*Taylor v. District Court for the Fourth*
*Judicial District.,* 434 P2d 679, Alaska 1967 ............................9

## **Other Authorities**

Tex. Const. art. V, § 5 .................................................................4

Tex. Gov't Code § 21.002(d) ......................................................17

Tex.R.App.P33.1(a) .....................................................................8

# Statement of Facts

Appellant was appointed to represent Chelsie Chenoweth on September 24, 2013 in cause number CR2013-366 in the District Court of Comal County (I C.R. at 11). Graham's contemptuous conduct began with Ms. Chenoweth's arraignment date on the February 25, 2014 docket call at 9:00 a.m. (I C.R. at 90). Ms. Chenoweth's case was called at 9:24 am, to which she announced her presence and explained to the court that she had not heard from or seen Appellant (I R.R. at 15). Graham eventually answered for Ms. Chenoweth at 9:38 am (I R.R. at 16). At 10:52 am Graham announced to the court that he had a plea ready to be heard for Ms. Chenoweth (I R.R. at 18). At the time Graham announced he was ready for the plea to be heard the court already had cases ready in front of Graham and Ms. Chenoweth. *Id*.

The court had a practice of taking custody cases first so that jail transport would only have to make one trip (I R.R. at 15). That day there were several defendants in custody who had pleas ready, as well as a contested hearing that the court had to hear before it could reach Appellant with Ms. Chenoweth (I R.R. at 18-19). The court then announced that it was taking up those matters and the cases left on the docket, including Appellant's with Ms. Chenoweth, would be reset to 1:15 (I R.R. at 19). The court reconvened at 1:34 and once again Ms. Chenoweth was present and Appellant was not (I R.R. at 20). The court heard the remaining

1

cases that had been reset and recessed for the day at 1:46 p.m. *Id*. Appellant did not show till 1:55 p.m. (I R.R. at 21).

The trial court then filed its show cause order that same day giving Appellant the opportunity to explain why he should not be held in contempt for "failing to arrive on time for docket call and [failing] to notify the court, and [he] was ordered to return to court at 1:15 and failed to return at said time and arrived at 1:50" (I C.R. at 16). Appellant was notified to appear on March 13, 2014 for the said show cause hearing. *Id*. The show cause order was sent to Appellant via certified mail and it was received on February 27, 2014 (I C.R. at 17). Appellant filed an unsworn response and request for continuance on March 10, 2014 stating "There was no reason why the case could not have been addressed in the morning" and that he had "hearings that are already scheduled for 3/13/2014 in the morning and as a result [he] cannot appear" (I C.R. at 4-6). The continuance was not granted and Graham failed to appear for his show cause hearing and for Ms. Chenoweth's pre-trial hearing on said date (I C.R. at 90; I R.R. at 58-62).

The trial court sua sponte removed Graham from Ms. Chenoweth's case and appointed new counsel (I C.R. at 22). The trial court then filed another show cause order on March 17, 2014 giving Appellant the opportunity to appear on April 8, 2014 to show cause why he should not be held in contempt of court (I C.R. at 19). The new show cause alleged the following transgressions: 1. Failure to arrive on

time to the 9:00am docket call on February 25, 2014; 2. Failure to return to Court at 1:15pm on February 25, 2014 as instructed by the court; 3. Failure to appear in Court on March 13, 2014 for Cause Number CR2013-366, State of Texas vs. Chelsie Michelle Chenoweth, as well as Mr. Graham's own Show Cause notice on the same date without a granted continuance or leave from the court. *Id*. Appellant was served with said notice on March 31, 2014. (I Supp. C.R. at 11).

The show cause hearing was heard by Judge Shaver and Appellant was found to be in contempt for the transgressions in the show cause notice. (I C.R. at 24; I R.R. at 71). Judge Shaver found from the evidence that "the Defendant seems to make his own determinations as to when he should or should not arrive in court," "it's a continuing pattern" and "Mr. Graham's conduct does obstruct the administration of justice with the pattern that the evidence today has shown" (I R.R. at 71). Judge Shaver set his punishment at 15 days in the Comal County Jail and a $300 fine (I R.R. at 72.) Before being taken into custody by the bailiff Appellant asked to "postpone that particular commission" and Judge Shaver subsequently ordered an appeal bond in the amount of $5,000. *Id*. That same day Appellant posted his $5,000 appeal bond (I Supp. C.R. at 14).

## Summary of the Argument

Appellant asserts his conduct did not rise to the level of criminal contempt for being late to a 9:00am docket call on February 25, 2014, then returning late from lunch to the 1:15 afternoon docket on the same date, and then failing to appear at his own show cause hearing and pretrial setting for his client, Ms. Chenoweth, on March 13, 2014. Appellant further claims that his due process rights were violated in that he was not afforded an attorney at his hearing, he was not advised of his right against self-incrimination, he was not afforded a right to jury trial, and the case was illegally transferred to an administrative Judge with there being no prior finding of contempt. The cases Appellant cites to for each of his alleged errors do not actually hold such.

## Only the Trial Court and Court of Criminal Appeals Have Original Habeas Corpus Jurisdiction

The Court of Criminal Appeals is the only Appellate Court in Texas which possesses the general and unlimited power to issue Writs of Habeas Corpus in criminal cases. *State ex rel. Wilson v. Briggs,* 351 S.W.2d 892 (1961); *Ex parte Rutherford,* 556 S.W.2d 853 (Tex.Civ.App.—San Antonio 1977, no writ); Tex. Const. art. V, § 5. Since the acts of contempt committed by the Appellant were criminal in nature, the State respectfully submits that the Court of Appeals does not have the power to issue a Writ of Habeas Corpus in this case. Even the one-page

4

opinion that Appellant sites very distinctly states "This court has no jurisdiction to grant relief sought in this proceeding [and] The Courts of Appeals have no original habeas corpus jurisdiction in criminal matters; their jurisdiction is appellate only. Tex. Code Crim. Pro. Ann. art. 4.03, as amended." *Denby v State*, 627 S.W.2d 435 (Tex.App., Houston [1st Dist.] 1981, no pet.), cert. denied, 462 U.S. 1110 (1983). "The Court of Criminal Appeals has the power and authority to grant and issue and cause the issuance of writs of habeas corpus in criminal matters. Tex. Code Crim. Pro. Ann. art. 4.04(1), as amended." *Id*.

Appellant filed his "Application for Writ of Habeas Corpus" with the trial court on March 19, 2015. (I C.R. 2nd Supp. at 4). However, it is clear from a review of the entire record that Appellant did not secure a hearing or a ruling. *See Ex parte Young*, 257 S.W.3d 276, 277 (Tex. App.—Beaumont 2008, no pet.) ("No appeal lies from the refusal to issue a writ of habeas corpus unless the trial court rules on the merits of the application."). Furthermore, simultaneously filing a writ in the trial court does not give appellate courts jurisdiction. *Ex parte Hearon*, 3 S.W.3d 650 (Tex. App.—Waco 1999, no pet.). Appellant may also not directly appeal his order of contempt to this Court; his only remedy is by writ of habeas corpus. *See Ex parte Aldridge*, 334 S.W.2d 161, 162 (1959); *Cortes v. State*, 14-99-01194-CV, 2000 WL 328500, at *1 (Tex. App.—Houston [14th Dist.] Mar. 23, 2000, no pet.) (mem. op., not designated for publication).

5

## Appellant Can Not Invoke the Original Habeas Corpus Jurisdiction of the Court of Criminal Appeals

Appellant claims he is illegally restrained as a result of the actions of administrative law Judge Douglas Shaver. On April 8, 2014 Judge Shaver entered a finding of contempt against Appellant and sentenced him to 15 days in the county jail and a $300 fine (I C.R. at 24). That same day Appellant posted a $5,000 appeal bond approved by Judge Shaver and was released from custody (I C.R. at 14). As subsequently mentioned, Appellant then filed an application for writ of habeas corpus with this Court. Appellant cites to *Ex Parte Trillo*, 540 S.W.2d 728, 731 (Tex. Crim. App. 1976) and argues that a person free on bond is also considered to be in custody for habeas corpus purposes. Appellant is correct in that a person free on bond can be considered to be in custody for habeas corpus purposes; however, that is not the case where a person has been held to be in contempt of court because any appeal bond would be invalid. *See Ex Parte Eureste*, 725 S.W.2d 214, 216 (Tex. Crim. App 1986). There is no remedy or right of appeal from an order of contempt and thus there can be no valid appeal bond. *Id*. Just like in *Eureste*, Graham is not under restraint of a contempt order or a valid bond and he therefore cannot invoke the original habeas corpus jurisdiction of the Court of Criminal Appeals. *See id*.

**Standard of Review for Contempt Order**

Appellate courts must uphold an order of contempt where the evidence, when viewed in the light most favorable to the order, could reasonably be said to have proven applicant guilty of the contemptuous acts alleged. *See Ex parte Murphy*, 669 S.W.2d 320, 322 (Tex. Crim. App. 1983).

**Appellant's Conduct Rose to the Level of Criminal Contempt**

Appellant claims his actions as alleged in the show cause order do not amount to criminal contempt. Contempt of court is categorized as either criminal or civil. *Ex parte Reposa*, AP-75,965, 2009 WL 3478455, at *4 (Tex. Crim. App. Oct. 28, 2009) (not designated for publication). "The Texas contempt statute, Government Code Section 21.002, encompasses both criminal and civil contempt, but it neither defines criminal contempt nor delineates what conduct constitutes contempt." *Id*. "Texas courts, however, have long had inherent power to find and punish for contempt [and] this power is broad and plenary." *Id*. "Although the exercise of this authority should be tempered with common sense and sound discretion, nevertheless we accord the judge's contempt power wide latitude because it is essential to judicial independence and authority." *Id*. Like Appellant's case, "[t]he more recent cases of criminal contempt have turned on whether the conduct obstructed the administration of justice or hindered the forward progress

of a trial." *See id*. "Criminal contempt has been defined by our predecessor court as encompassing all those acts in disrespect of the court, or of its process, or which obstruct the administration of justice, or tend to bring the court into disrepute." *Id*. Appellant's contempt is of the criminal variety. *See id*.

Appellant's repeated tardiness and absence are considered to be indirect or constructive contempt. *See Ex parte Murphy*, 669 S.W.2d 320, 321 (Tex. Crim. App. 1983); *Ex parte Cooper*, 657 S.W.2d 435, 437 (Tex. Crim. App. 1983). Indirect or constructive contempt is an act which does not occur within the presence of the court, but rather at a distance. *Ex parte Hardin,* 344 S.W.2d 152 (1961). This type of contempt tends to obstruct, degrade, prevent, interrupt, or embarrass the administration of justice. *Ex parte Privitt,* 77 S.W.2d 663 (1934); *Ex parte Vogler,* 9 S.W.2d 733, 734 (1928). If contempt is constructive, the alleged contemnor has the right to notice of the charge, a right to a trial or hearing, and a right to counsel. *Ex parte Wilson*, 559 S.W.2d 698, 700 (Tex. Civ. App.—Austin 1977, no writ); *Ex parte Hosken*, 480 S.W.2d 18, 24 (Tex. Civ. App.—Beaumont 1972, no writ).

Appellant claims his actions are similar to those in which other Texas courts have held there was not contempt. He first sites to *Ex parte Butler*, 372 S.W.2d 686, 687 (Tex. Crim. App. 1963). The one page opinion details the attorney contemnors acts as being 10 to 20 minutes late to one court because he appeared in

8

a court of equal jurisdiction first. *See id*. The court made clear that the potential delay caused in trial for the offended court was at most 10- 20 minutes and this did not rise to the level of contempt. *See id*. In fact, all cases that Appellant sites to only deal with one act of being late. *See In re Monroe*, 532 F.2d 424, 425-426 (5th Cir. [Tex] 1976; *In Re Farquhar*, 492 F.2d 561 (D.C. Cir. 1973); *In Re Monroe*, 532 F.2d 424 (5th Cir. 1976); *Taylor v. District Court for the Fourth Judicial Dist*., 434 P.2d 679, Alaska 1967). What distinguishes Appellant's behavior is his repeated acts of tardiness and wholly failing to show to his client's pretrial hearing and his own show cause hearing (see I R.R. at 58-62). This resulted in Appellant being sua sponte removed from Ms. Chenoweth's case and new counsel having to be appointed (I C.R. at 22).

Appellant attempts to minimize his actions in his brief. He refers to his tardiness as "a few minutes late" and claims to have arrived "at around 9 am." Appellant's Brief at 6, 8. He then states that he had to wait for several hours and he had to bring the case to the Court's attention several times. *Id*. at 8-9. He also claims the court took an extended break. *Id*. He acknowledges that he was ordered to return at 1:15 and claims he returned at 1:35pm. *Id*. at 9. He then asserts that he was "wrongfully found guilty of contempt due to being tardy by a few minutes and because he did not appear at the 3/13/2014 show cause hearing even though a continuance was requested." *Id*. at 10.

9

The evidence in the contempt hearing actually showed that on the 9:00am docket call Appellant was not present when Ms. Chenoweth's name was called and Appellant did not announce his presence till 9:38 a.m. Court Reporter Rick Roberts testified that Appellant was not present when Ms. Chenoweth's name was called and he did not announce for her till 9:38 a.m. (I R.R. at 15-16). Ms. Chenoweth testified that Appellant did not let her know he would be late and he did not show up for at least 30 minutes after docket call (I R.R. at 30-31).

With regards to Appellant's claim that the Court took an extended break, the testimony in the contempt hearing is clear a recess was taken from 9:48 till 10:48, not several hours (I R.R. at 17). Appellant then let the Court know he had a plea ready at 10:52am (I R.R. at 18). Mr. Robert's testimony explained that there were several cases with defendants in custody and a contested motion to revoke ahead of Appellant's plea with Ms. Chenoweth, so Appellant was ordered to return at 1:15 p.m. (*id.* at 18-19).

The evidence in the contempt hearing was also clear in that the Appellant did not return to the 1:15 afternoon docket until 1:55 p.m. Mr. Roberts testified that Appellant did not return until approximately 1:55 p.m., after the court had recessed for the day (I R.R. at 21). Ms. Chenoweth also testified that she returned at 1:15 and Appellant had not called to let her know he would be late; she was released by the Judge before Appellant arrived (I R.R. at 31).

10

Appellant next filed his "Response to Court's Order to Show Cause and Request for Continuance" on March 10, 2014, in response to the Court's show cause order filed on February 25, 2014 (I C.R. at 4). In Appellant's response he claims "I checked in the court shortly after 9 am," "During the next few minutes… the Court was notified that the plea in the case was ready to be heard," "the Court inexplicably took a break from conducting court activities from approximately 9:45 am until 11:20 am," "the Court twice neglected to address that the *State v. Chenoweth* case was ready for a plea," "therefore from approximately 9 am until 1:15 pm counsel for Chenoweth was forced to wait on the Court to address this case" and "there was no reason why the case could not have been addressed in the morning." *Id*. The Appellant also requested a continuance as he had "court hearings scheduled in another district court on 3/13/2014." *Id*.

The evidence in the contempt hearing showed that on March 13, 2014 Appellant did not appear for either his show cause hearing or the pretrial docket hearing for Ms. Chenoweth. Ms. Chenoweth let the court know on said date that "I don't even know if he's coming. I haven't talked to him at all since the day I – when I came back after lunch and he never showed up" (I R.R. at 23). Appellant's own testimony was that he failed to get a ruling on the continuance and failed to show to court on March 13, 2014 (I R.R. at 57).

What is clear from the record is Appellant's lack of respect for the Court. This is evidenced in his "Facts" stated in his "Response to Court's Order to Show Cause and Request for Continuance." *See* I Supp. C.R. at 4-5. Also, when asked in his contempt hearing who was to blame for Ms. Chenowith's case not being handled in an expeditious manner and if it was the Court's fault, the Appellant responded with "[w]ell, all I know is the plea paperwork was done in the morning time, and, you know, there had to be a wait until 1:15, when, you know, the court reporter indicated that basically pleas just take five minutes in order to get done" (I R.R. at 63). He also explained that "[t]here is no reason… I should have been forced to wait from, you know, 10:00 o'clock to 1:15 in order to do a plea" (I R.R. at 62). Appellant also responded that he was not present on March 13, 2014 "Because the Court gave me an arbitrary date" (I R.R. at 62).

Appellant's actions are more akin to cases like *Ex Parte Murphy*, where the attorney failed to attend a pretrial hearing on August 12, 1983, and failed to appear for the trial on the merits on August 22, 1983. *See* 669 S.W.2d at 321. The court of appeals ultimately ruled that when viewed in the light most favorable to the order, the evidence was sufficient to warrant a finding of contempt. *See id.* at 322. Ms. Chenoweth expressed in the contempt hearing that she wanted to enter a plea on February 25, 2014 and was unable to do so because of Appellant's tardiness. (I R.R. at 31). Again, she was not able to do so when Appellant failed to appear on

12

March 13, 2014 and was actually not able to plea with new counsel till May 19, 2014 (I C.R. at 42). When viewed in light most favorable to Appellant's order of contempt it is clear his tardiness and absence obstructed the administration of justice.

**Appellant Was Not Entitled to Court-Appointed Counsel at His Contempt Hearing**

Appellant claims he was not afforded the right to an attorney and that a pro se party facing incarceration for indirect contempt must be informed of such right. The record shows Appellant made a request for a court-appointed attorney and was denied (I Supp. C.R. at 5). Appellant claims he was denied a hearing on the matter; however, a review of the record makes it clear that he never made the request for a hearing. Furthermore, Appellant is an attorney licensed to practice law in the State of Texas and practices criminal law in multiple jurisdictions (I R.R. at 46). He now makes the claim in this writ that he should have the right to an attorney in a contempt hearing. Appellant is clearly aware of his right to counsel.

Even if a hearing on the issue of indigency had been conducted, Graham is clearly not indigent. This Court has upheld such a finding during the relevant time period. *See In re Graham*, 03-14-00270-CV, 2014 WL 5107134, at *1 (Tex. App.—Austin Oct. 9, 2014, no pet.) (mem. order, not designated for publication). This Court noted that:

during the hearing, Graham (who is an attorney) equivocated when asked specific questions about his income from court appointments in various cities and counties, stating that he did not know what the exact numbers were. He also would not state how much money he had made on retained cases or how much his earnings were for the past year, again stating that he did not know how much he had made. In addition, Graham testified at the hearing that his parents pay his $750 per month car payment, his approximate $1500 per month hotel bill, and provided some part of the $5000 cash bond to get him released from jail.

Appellant now argues that he should have been appointed counsel without regard to a claim of indigency. Texas Courts have held that a person charged with contempt is not entitled to have an attorney present where they are aware of the right to counsel and not indigent. *See Ex parte McIntyre*, 730 S.W.2d 411, 414-15 (Tex. App.—San Antonio 1987, no writ). Just like in *Mcintyre*, Appellant does not claim in his writ of habeas corpus that he is indigent, but argues that he should have been afforded counsel without regard to the question of whether he was an indigent. *See id.* at 415. It is clear from the order sustaining contest of Appellant's indegency that he is not indigent and is therefore not entitled to appointed counsel.

**Appellant Was Not Compelled to Testify at His Contempt Hearing**

Appellant contends he should have been admonished of his right against self-incrimination if he was compelled to testify and sites to *In re Brown*, 114 S.W.3d 7, 12-13 (Tex. App.—Amarillo 2003, no pet.). Appellant fails to provide details of how he was compelled to testify. Additionally, he was not in custody at

the time of his contempt hearing. Whether the Fifth Amendment is implicated when an individual testifies does not depend on whether the witness made a knowing decision to testify, but on why he or she chose to testify. *See Lucero v. State,* 91 S.W.3d 814, 818 (Tex. App.—Amarillo 2002, no pet.) (Quinn, J., concurring) (*citing Harrison v. United States,* 392 U.S. 219, 223 (1968)). In making such a determination, the totality of the circumstances must be assessed. If the decision constituted an exercise in free will, then the Fifth Amendment right to be free from compelled self-incrimination is not implicated. *In re Brown*, 114 S.W.3d 7, 12 (Tex. App.—Amarillo 2003, no pet.) Appellant does not contend that he was either directly or indirectly coerced to testify. He also does not assert that he was unaware of his right not to be compelled to testify, or that he would not have testified had he been admonished of that right by the trial court. The totality of the circumstances compels the conclusion that Appellant exercised his free will in deciding to testify. *See In re Brown*, 114 S.W.3d 7, 12-13 (Tex. App.—Amarillo 2003, no pet.).

**Appellant Was Not Entitled to a Jury Trial**

Appellant claims he was entitled to a jury trial and sites to *Ex Parte Werlbud*, 536 S.W.2d 542 (Tex. 1976) and *Ex Parte Sproull*, 815 S.W.2d 250 (Tex. 1991). Appellant makes the leap that since he was alleged to have committed

several acts of contempt he was subject to serious punishment and therefore must have been notified of the right to jury trial. Both cases were subsequently analyzed thoroughly in the same context in which Appellant claims he should have been notified of the right to jury trial. *See In re Brown*, 114 S.W.3d 7, 10-12 (Tex. App.—Amarillo 2003, no pet.). "*Werblud* states clearly the applicable dividing line between petty and serious contempt: unless the legislature has authorized a serious punishment for contempt (which the Texas legislature has not), *the punishment imposed* determines whether the contempt is petty or serious, *not the punishment possible*." *Id*. (emphasis added). "The Texas contempt statute at the time *Werblud* was decided provided punishment for contempt of court as a fine of not more than $500 or confinement in the county jail for not more than six months, or both, and was intended to keep contempt punishments within the petty offense category." *Id*. The opinion in *Brown* concluded "The punishment imposed on relator falls on the petty crime side of the line. He was not entitled to a jury trial, and he was not entitled to be admonished otherwise." *Id*. Although the punishment possible for Appellant was over 6 months, the punishment actually imposed was 15 days in the county jail and a $300 fine (I R.R. at 72). Appellant was therefore not entitled to be admonished of his right to jury trial.

16

**Appellant's Due Process Rights Were Not Violated When His Show Cause Hearing Was Transferred to Judge Shaver**

Appellant contends his case was illegally transferred to administrative Judge Douglas Shaver and his due process rights were violated because he was not first found in contempt by the trial court as required by Tex. Gov't Code § 21.002(d). Appellant contends in his brief "that in order to invoke the mandatory requirement for a trial court to refer contempt proceedings… the following must take place 1) the offended court must enter a finding of contempt against an officer of the court and 2) the officer of the court must file a proper motion in the offended court." Appellant's Brief at 18,19.

Graham's show cause hearing on April 8, 2014 did not violate Tex. Gov't Code Sec.21.002(d) which states:

> "An officer of a court who is held in contempt by a trial court shall, on proper motion filed in the offended court, be released on his own personal recognizance pending a determination of his guilt or innocence. The presiding judge of the administrative judicial region in which the alleged contempt occurred shall assign a judge who is subject to assignment by the presiding judge other than the judge of the offended court to determine the guilt or innocence of the officer of the court."

Appellant was not held in contempt by the trial court, the Honorable Gary Steel presiding. Instead, Appellant was issued two "show cause" notices from Judge Steel, who ultimately then provided Appellant a hearing before Judge Shaver, a non-offended, neutral Judge. Judge Shaver then held Appellant in contempt after a

17

hearing determining his guilt or innocence. Section 21.002(d) provides that officers of the court, like Appellant, are entitled to a personal recognizance bond pending a hearing on their guilt or innocence.

Had Appellant been held in contempt by Judge Steel, he would have been entitled to said bond pending his hearing before Judge Shaver. Instead, Appellant failed to appear to his first show cause hearing on March 13, 2014 and remained free from a finding of contempt – and therefore, the need for a personal recognizance bond. "The contempt statute itself says little about the procedures to be followed during a contempt hearing, except to provide for a separate proceeding for an officer of the court where an assigned judge determines guilt or innocence" *Ex parte Reposa*, 2009 WL 3478455, at *7. The whole procedure complied with Section 21.002(d) in that Graham had his hearing before a judge *other* than the judge of the offended court to determine Appellant's guilt or innocence. Furthermore, Graham was personally served with the show cause notice on March 31, 2014 (I Supp. C.R. at 11).

Although Appellant now complains the proceedings violated his procedural due process rights, he did not make this complaint at the hearing where Judge Shaver originally found him in contempt. *See Ieppert v. State,* 908 S.W.2d 217, 219 (Tex. Crim. App. 1995) (observing that even due process rights may be forfeited); *see also* Tex. R. App. P. 33.1(a) (generally a complaint must be made to

18

the trial court by a timely request, objection or motion to preserve error for appellate review); *Rogers v. State*, 640 S.W.2d 248, 263-64 (Tex. Crim. App. 1981) (op. on reh'g) (holding that procedural due process issues are subject to waiver under the standard preservation-of-error rules); *Ex parte Alakayi*, 102 S.W.3d 426, 434-35 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd) (finding that appellant had waived his procedural due process complaint by failing to raise the issue with the trial court); *McCarroll v. Texas Dept. Of Public Safety,* 86 S.W.3d 376, 379 (Tex.App.-Fort Worth 2002, no pet.) (holding that appellant waived his procedural due process complaint by failing to present it to the trial court). Where an appellant's complaints on appeal do not comport with his trial objections, nothing is preserved for review. See *Garcia v. State*, 07-02-0358-CR, 2004 WL 2578097, at *5 (Tex. App.—Amarillo Nov. 12, 2004, no pet.) (not designated for publication) ("Appellant's first issue on appeal does not comport with his trial objection, and presents nothing for our review.") (internal citations omitted). Appellant in the instant case likewise failed to raise his due process complaint with the trial court, nothing is preserved for review.

Furthermore, even if Appellant had preserved his point of error, he has not explained how such an alleged departure from procedure harmed him or resulted in a denial of procedural due process. *See In re Francis*, 09-11-00116-CV, 2011 WL 3847447, at *2 (Tex. App.—Beaumont Aug. 31, 2011, no pet.) (mem. op., not

19

designated for publication). In fact, the procedure in Appellant's case 'cured' any procedural due process error. *See Ex parte Murphy*, 669 S.W.2d 320, 321 (Tex. Crim. App. 1983) (where the Court of Criminal Appeals found a subsequent de novo hearing cured an earlier denial of an appellant's due process due to lack of notice). In the instant case, Appellant was actually afforded *more* protection than procedural due process requires. Courts have observed that one concern in cases of contempt is that trial courts must "be on guard against confusing offenses to their sensibilities with obstruction to the administration of justice." *Brown v. United States*, 356 U.S. 148, 153 (1958). In Appellant's case, the fact that a judge *other* than the offended judge conducted the hearing and ultimately found Appellant in contempt removed the concern expressed in *Brown*. Appellant cannot complain he was harmed by being taken before a *more impartial* court – one less likely to have been personally offended by and prejudiced against Appellant.

## Appellant's Punishment Is Supported by the Record

Appellant contends that punishment of 15 days in the Comal County Jail is draconian. Texas courts have long held that a sentence which falls within the statutorily prescribed range of punishment is not cruel and unusual under the Constitution, nor does it "render the punishment excessive and insupportable." *Ex parte Reposa*, 2009 WL 3478455, at *13. This rule is limited, however, by the

gross-disproportionality principle embodied in the Eighth Amendment's Cruel and Unusual Punishments Clause, applicable to noncapital sentences, which proscribes punishments that are disproportionate to the crime. *Id.* at *14. In *Ex parte Reposa*, the Court of Criminal Appeals found that the "[s]entence of ninety days is in the middle of the range of punishment permitted by the contempt statute" and "Judge Davis had broad discretion to assess punishment within that legislatively-prescribed range." *Id*. Appellant fails to cite to precedent or explain how his significantly lesser punishment of 15 days in the Comal County Jail is disproportionate to the crime.

**Prayer**

Wherefore, premises considered, Appellee prays that this Honorable Court of Appeals affirm in all matters the judgment of the trial court in this case. Appellee also prays for all other relief, both special and general, in law and in equity, to which it may be entitled.

Jennifer Tharp
Criminal District Attorney

By

/s/ Daniel Palmitier
**Daniel Palmitier**
SBN: 24062934
Assistant District Attorney
150 N. Seguin Avenue, Ste. #307
New Braunfels, Texas 78130
(830) 221-1300
Fax (830) 608-2008
E-mail: palmid@co.comal.tx.us
Attorney for the State

## Certificate of Service

I, Daniel Palmitier, attorney for the State of Texas, Appellee, hereby certify that a true and correct copy of this Brief for the State and the attached appendix has been delivered to Appellant, Christopher L. Graham, attorney of record in this matter:

Christopher L. Graham
P.O. Box 226265
Dallas, Texas 75222
Telephone: (469) 605- 6846
Email: clgraham@lgi-law.com
Attorney for Appellant on Appeal

By electronically sending it to the above-listed email address through efile.txcourts.gov e-filing, this 9th day of September, 2015.

/s/ Daniel Palmitier
**Daniel Palmitier**

## Certificate of Compliance

I hereby certify, pursuant to Rule 9.4(i)(2)(B) and Rule 9.4(i)(3) of the Texas Rules of Appellate procedure that the instant brief is computer-generated using Microsoft Word and said computer program has identified that there are 5,317 words within the portions of this brief required to be counted by Rule 9.4(i)(1) & (2) of the Texas Rules of Appellate Procedure.

The document was prepared in proportionally-spaced typeface using Times New Roman 14 for text and Times New Roman 12 for footnotes.

/s/ Daniel Palmitier
**Daniel Palmitier**

# Appendix

| Vernon's Texas Statutes and Codes Annotated |
|---|
| Constitution of the State of Texas 1876 (Refs & Annos) |
| Article V. Judicial Department |

Vernon's Ann.Texas Const. Art. 5, § 5

§ 5. Jurisdiction of Court of Criminal Appeals; terms of court; clerk

Effective: November 26, 2001

Currentness

Sec. 5. (a) The Court of Criminal Appeals shall have final appellate jurisdiction coextensive with the limits of the state, and its determinations shall be final, in all criminal cases of whatever grade, with such exceptions and under such regulations as may be provided in this Constitution or as prescribed by law.

(b) The appeal of all cases in which the death penalty has been assessed shall be to the Court of Criminal Appeals. The appeal of all other criminal cases shall be to the Courts of Appeal as prescribed by law. In addition, the Court of Criminal Appeals may, on its own motion, review a decision of a Court of Appeals in a criminal case as provided by law. Discretionary review by the Court of Criminal Appeals is not a matter of right, but of sound judicial discretion.

(c) Subject to such regulations as may be prescribed by law, the Court of Criminal Appeals and the Judges thereof shall have the power to issue the writ of habeas corpus, and, in criminal law matters, the writs of mandamus, procedendo, prohibition, and certiorari. The Court and the Judges thereof shall have the power to issue such other writs as may be necessary to protect its jurisdiction or enforce its judgments. The court shall have the power upon affidavit or otherwise to ascertain such matters of fact as may be necessary to the exercise of its jurisdiction.

**Credits**

Amended Aug. 11, 1891, proclamation Sept. 22, 1891; Nov. 8, 1966; Nov. 8, 1977, eff. Jan. 1, 1978; Nov. 4, 1980, eff. Sept. 1, 1981; Nov. 6, 2001, eff. Nov. 26, 2001.

**Editors' Notes**

**INTERPRETIVE COMMENTARY**

**2007 Main Volume**

In defining the jurisdiction of the court of criminal appeals, this section confines its powers to the exercise of appellate jurisdiction in criminal matters exclusively. It thus has no civil jurisdiction, but it is the court of final jurisdiction in criminal matters.

The two high courts in Texas are, therefore, independent of each other, the supreme court being the final tribunal in civil matters and the court of criminal appeals supreme in criminal. Since it is not possible to set forth their jurisdiction so as to eliminate all possibilities of conflict, there have been some instances of disagreement between the two supreme courts as to the constitutionality of statutes.

Section 5 grants to the court jurisdiction in criminal cases "with such exceptions and under such regulations as may be prescribed by law." This provision demonstrates the intent of the framers to place criminal appeals within the province of the legislative body which may make exceptions to the right of appeal, create regulations concerning the jurisdiction of the court, and create rules applicable to the prosecuting of an appeal. The court cannot, therefore, go beyond constitutional and legislative limitations on its powers.

The court, like the supreme court, is also given the power to issue writs of habeas corpus and other writs necessary to enforce its jurisdiction, the latter under such regulations as may be prescribed by law. Thus, the jurisdiction of the court is completely appellate except in regard to the issuance of the writ of habeas corpus where it has original jurisdiction.

Like the supreme court, this court is empowered "upon affidavit or otherwise, to ascertain such matters of fact as may be necessary to the exercise of its jurisdiction." Only this respect, as to the exercise of its own jurisdiction, may it consider matters of fact, for it is an appellate court, and as such is without jurisdiction to hear evidence and from it to determine issues of fact.

A rigid, non-continuous term is set out by this section for the court of criminal appeals wherein it is provided that the court "shall sit for the transaction of business from the first Monday in October to the last Saturday of June in each year." This signifies that the decisions of the court must be handed down during this term, for during the three months' vacation the court is without power as a tribunal.

Again, as distinguished from the supreme court, the legislature is empowered to provide that the court shall sit "at the state capital and two other places (or the capital city)." The legislature has prescribed that the court shall sit only at the capital, the city of Austin. Vernon's Ann.Civ.St. art. 180.4.

The court of criminal appeals also has the power to appoint a clerk for a four year term, unless removed sooner by the court for good cause.

Notes of Decisions (302)

Vernon's Ann. Texas Const. Art. 5, § 5, TX CONST Art. 5, § 5
Current through the end of the 2015 Regular Session of the 84th Legislature

**End of Document**
© 2015 Thomson Reuters. No claim to original U.S. Government Works.

 © 2015 Thomson Reuters. No claim to original U.S. Government Works.

Vernon's Texas Statutes and Codes Annotated
  Government Code (Refs & Annos)
    Title 2. Judicial Branch (Refs & Annos)
      Subtitle A. Courts
        Chapter 21. General Provisions (Refs & Annos)

V.T.C.A., Government Code § 21.002

§ 21.002. Contempt of Court

Effective: June 20, 2003
Currentness

(a) Except as provided by Subsection (g), a court may punish for contempt.

(b) The punishment for contempt of a court other than a justice court or municipal court is a fine of not more than $500 or confinement in the county jail for not more than six months, or both such a fine and confinement in jail.

(c) The punishment for contempt of a justice court or municipal court is a fine of not more than $100 or confinement in the county or city jail for not more than three days, or both such a fine and confinement in jail.

(d) An officer of a court who is held in contempt by a trial court shall, on proper motion filed in the offended court, be released on his own personal recognizance pending a determination of his guilt or innocence. The presiding judge of the administrative judicial region in which the alleged contempt occurred shall assign a judge who is subject to assignment by the presiding judge other than the judge of the offended court to determine the guilt or innocence of the officer of the court.

(e) Except as provided by Subsection (h), this section does not affect a court's power to confine a contemner to compel the contemner to obey a court order.

(f) Article 42.033, Code of Criminal Procedure, and Chapter 157, Family Code, apply when a person is punished by confinement for contempt of court for disobedience of a court order to make periodic payments for the support of a child. Subsection (h) does not apply to that person.

(g) A court may not punish by contempt an employee or an agency or institution of this state for failure to initiate any program or to perform a statutory duty related to that program:

  (1) if the legislature has not specifically and adequately funded the program; or

  (2) until a reasonable time has passed to allow implementation of a program specifically and adequately funded by the legislature.

(h) Notwithstanding any other law, a person may not be confined for contempt of court longer than:

(1) 18 months, including three or more periods of confinement for contempt arising out of the same matter that equal a cumulative total of 18 months, if the confinement is for criminal contempt; or

(2) the lesser of 18 months or the period from the date of confinement to the date the person complies with the court order that was the basis of the finding of contempt, if the confinement is for civil contempt.

**Credits**

Acts 1985, 69th Leg., ch. 480, § 1, eff. Sept. 1, 1985. Amended by Acts 1989, 71st Leg., ch. 2, § 8.44(1), eff. Aug. 28, 1989; Acts 1989, 71st Leg., ch. 560, § 1, eff. June 14, 1989; Acts 1989, 71st Leg., ch. 646, § 1, eff. Aug. 28, 1989; Acts 1989, 71st Leg., 1st C.S., ch. 25, § 34, eff. Nov. 1, 1989; Acts 1995, 74th Leg., ch. 262, § 87, eff. Jan. 1, 1996; Acts 1997, 75th Leg., ch. 165, § 7.24, eff. Sept. 1, 1997; Acts 2001, 77th Leg., ch. 1297, § 71(4), eff. Sept. 1, 2001; Acts 2003, 78th Leg., ch. 425 § 1, eff. June 20, 2003.

Relevant Notes of Decisions (2)

View all 578

Notes of Decisions listed below contain your search terms.

**Due process**

Trial court was required to follow due process protections contained in § **21**.**002** in imposing attorney fees against attorney as sanction for attorney's misbehavior under § 82.061 governing misbehavior or contempt by attorneys during trial; also sanctions imposed exceeded trial court's authority under § **21**.**002**. Kidd v. Lance (App. 3 Dist. 1990) 794 S.W.2d 586. Constitutional Law 4494; Contempt 68

**Officer of court--In general**

A court would likely conclude that an attorney held in contempt under V.T.C.A., Government Code section 665.005 is entitled to the protections of V.T.C.A., Government Code section **21**.**002**(d). Tex. Atty. Gen. Op., No. GA-1057 (2014).

V. T. C. A., Government Code § **21**.**002**, TX GOVT § **21**.**002**
Current through the end of the 2015 Regular Session of the 84th Legislature

**End of Document** © 2015 Thomson Reuters. No claim to original U.S. Government Works.

Vernon's Texas Rules Annotated
  Texas Rules of Appellate Procedure
    Section Two. Appeals from Trial Court Judgments and Orders (Refs & Annos)
      Rule 33. Preservation of Appellate Complaints (Refs & Annos)

TX Rules App.Proc., Rule 33.1

33.1. Preservation; How Shown

Currentness

(a) *In General.* As a prerequisite to presenting a complaint for appellate review, the record must show that:

(1) the complaint was made to the trial court by a timely request, objection, or motion that:

(A) stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context; and

(B) complied with the requirements of the Texas Rules of Civil or Criminal Evidence or the Texas Rules of Civil or Appellate Procedure; and

(2) the trial court:

(A) ruled on the request, objection, or motion, either expressly or implicitly; or

(B) refused to rule on the request, objection, or motion, and the complaining party objected to the refusal.

(b) *Ruling by Operation of Law.* In a civil case, the overruling by operation of law of a motion for new trial or a motion to modify the judgment preserves for appellate review a complaint properly made in the motion, unless taking evidence was necessary to properly present the complaint in the trial court.

(c) *Formal Exception and Separate Order Not Required.* Neither a formal exception to a trial court ruling or order nor a signed, separate order is required to preserve a complaint for appeal.

(d) *Sufficiency of Evidence Complaints in Nonjury Cases.* In a nonjury case, a complaint regarding the legal or factual insufficiency of the evidence--including a complaint that the damages found by the court are excessive or inadequate, as distinguished from a complaint that the trial court erred in refusing to amend a fact finding or to make an additional finding of fact--may be made for the first time on appeal in the complaining party's brief.

**Credits**
Eff. Sept. 1, 1997. Amended by Supreme Court Dec. 23, 2002, eff. Jan. 1, 2003.

WestlawNext © 2015 Thomson Reuters. No claim to original U.S. Government Works.

**Editors' Notes**

**NOTES AND COMMENTS**

Comment to 2002 change: The last sentence of former Rule 52(d) of the Rules of Appellate Procedure has been reinstated in substance.

Notes of Decisions (3438)

Rules App. Proc., Rule 33.1, TX R APP Rule 33.1
Current with amendments received through 6/1/2015

**End of Document**

© 2015 Thomson Reuters. No claim to original U.S. Government Works.